Powell E. PHILLIPS et al., Appellants,

v.

Thomas W. HOPWOOD, Appellee.

No. 13464.

Court of Civil Appeals of Texas.

Houston.

Nov. 5, 1959.

Rehearing Denied Dec. 3, 1959.

G. Winston Cutrer, DeLange, Hudspeth & Pitman, Albert J. DeLange, C. M. Hudspeth, E. J. Pitman, M. Marvin Katz, Houston, for appellants.

John H. Holloway, Houston, for appellee.

BELL, Chief Justice.

This is an appeal from a judgment of the District Court refusing to set aside a judgment previously rendered against appellants.

On January 7, 1957, judgment was rendered, jointly and severally, in Cause No. 425,944 in the 133rd District Court, the cause having been transferred from the 55th District Court, in favor of appellee against appellants, Powell E. Phillips, Charles Linden Phillips, C. Enloe Phillips and W. Henry Phillips, Jr., individually and as partners doing business as Phillips Paper and Box Company, and Phillips Realty and Building Company, a corporation. The judgment was for $23,928 and attorney's fees of $2,392.80. The basis of the suit was an alleged contract whereby appellants employed appellee as engineer in connection with the construction of an addition to appellants' warehouse in Houston. He asserted a breach of the contract and alternatively he sued for a lesser amount on the theory of quantum meruit. Recovery was apparently for damages·for breach of contract.

On June 6, 1957, appellants filed their petition in the nature of an Equitable Bill of Review. In the petition, after setting up the filing by appellee of the suit in which judgment was rendered, such suit having been filed September 11, 1953, appellants allege that after citation was served on September 15, 1953, they employed counsel to represent them and their counsel filed an answer to said suit consisting of a general denial, which was the only answer necessary, the contract being sued upon not being in writing. It is alleged that the attorneys for the respective parties tried to take depositions from time to time, but for one reason or another they were never taken. The case was set for trial several times but was not tried, principally because it was not reached or because of conflicting engagements of the attorneys or the illness of W. Henry Phillips, Jr. They allege they were ready for trial whenever the case should be reached. In November, 1956, appellants' counsel withdrew because he had been paid no fee and he felt he was not receiving the cooperation of his clients.

The first part of November, 1956, counsel, by telephone, advised W. Henry Phil-

lips, Jr., of his intention to withdraw and that Phillips should get other counsel. On November 15, 1956, counsel was permitted by the court to withdraw. On November 21 a copy of the order permitting withdrawal was mailed W. Henry Phillips, Jr., and also to M. R. Heaner, attorney for appellee. On November 16, 1956, Mr. Heaner wrote a letter to W. Henry Phillips, Jr., stating the case had been passed by agreement at the November 12th setting and that he had set the case for trial for January 7, 1957, and enclosed a copy of the request for setting. None of the letters or notices were sent to the other appellants. It is alleged that W. Henry Phillips, Jr., had had a serious operation and for several years was in a weakened physical and mental condition. He was nervous, forgetful, impatient, frustrated and confused. About a year before filing the bill of review the partners started relieving him of many duties, realizing he was not physically and emotionally or temperamentally competent to continue handling the numerous matters he had previously handled. When W. Henry Phillips, Jr., received notice of the withdrawal of counsel and notice that the case was set for January 7, 1957, he was not physically or mentally able to understand the meaning or importance of the matter. He forgot about them and did nothing and did not tell the other partners, who were his brothers, anything about the withdrawal of counsel or the setting. It is alleged that the rules and long-standing practice in the Harris County District Courts required that where a party sets a case for trial he shall notify the attorney for all of the opposite parties, or, if they have no attorney he must notify each of the parties. Appellee's counsel only sent the notice of the setting to W. Henry Phillips, Jr., and to counsel for appellants who had withdrawn the day before the notice was sent. Then appellants allege that when the case came on for trial none of them were present and Judge Hunt, who heard the case without a jury, asked appellee's counsel if the defendants had been notified of the setting and the attorney answered that they had. It is asserted that had this representation not been made to the Court, the Court would not have tried the case. They allege fraud to consist in this representation because only W. Henry Phillips, Jr., had been notified of the setting.

Appellants further set up a meritorious defense to the suit and asserted appellee was guilty of falsely testifying at the trial before Judge Hunt as to the merits of the controversy.

We will take no further note of the meritorious defense that was set up because we think the evidence introduced on trial of the bill of review establishes that the appellants had a meritorious defense which would support a jury's finding in their favor.

■ Nor will we notice further appellants' assertion that appellee testified falsely as to the merits of the suit in order to obtain the original judgment. Even if he did so, it would but establish intrinsic fraud which is not grounds for setting aside a final judgment. Alexander v. Hagedorn, 148 Tex. 565, 226 S.W.2d 996; 25 Tex. Jur., § 201, pp. 606, 607; Freeman on Judgments, § 1233.

■ The real question in this appeal is whether the appellants raised fact issues that should have been submitted to a jury. The issues in a case of this kind, apart from the existence of a meritorious defense or cause of action, are (1) whether the complaining litigant was prevented from making his defense or proving his cause of action by the fraud, accident or wrongful act of his adversary, and (2) that the failure to make such defense or present the cause of action was because of such fraud, accident or wrongful act unmixed by any fault or negligence on the part of the complaining party. Garcia v. Ramos, Tex.Civ.App., 208 S.W.2d 111, error ref.

█ Since the Trial Court in this case instructed the jury to return a verdict for appellee and on such verdict rendered judgment for appellee, we must determine whether as a matter of law the evidence introduced fails to establish fraud, accident or wrongful act on the part of appellee or his representative, or, if fraud, accident or wrongful act is established, as to whether such was the cause of appellants' failure to present their defenses unmixed by any fault or negligence on their part. In determining whether fact issues were raised, we must view the evidence and the reasonable inferences to be drawn therefrom most favorably to appellants. If there is testimony which if true would establish the ultimate issues to be decided fact issues are presented, or, if there is testimony from which reasonable minds could make different inferences concerning the existence or not of the ultimate facts, fact issues are presented.

█ We hold that appellants alleged facts which if true would amount to extrinsic fraud in that they alleged only W. Henry Phillips, Jr., was given notice of the suit. While notice to him would be binding on the Phillips Realty and Building Company, a corporation, he being its president, would be binding on him in his individual capacity, and would be binding on the Phillips Paper and Box Company, a partnership, because he was a partner, it would not be binding on the other partners to the extent that personal judgment is sought against them individually. Notice concerning a corporate matter given to the president is notice to the corporation. Notice concerning a partnership matter given a partner is notice to the partnership. The appellants thus allege extrinsic fraud as to the partners who were not notified.

An additional approach of appellants is that extrinsic fraud existed because appellee's attorney stated to the Court that the defendants had been notified and the Court would not have tried the case if this false representation had not been made. We are unable to see what difference this makes. It seems to us the controlling question is whether notice of the setting was given. We suspect this novel approach is made because of the evident fact that the testimony shows inexcusable negligence on the part of the partners in not concerning themselves with the case and in taking no notice of the notice that had been sent W. Henry Phillips, Jr., when they could have easily made inquiry of W. Henry Phillips, Jr., their agent. They seize upon alleged representations to the Court when they were not present to free themselves from the effect of their negligence. It seems to us the case depends on whether notice was given, or, if it was not actually given, whether appellants' negligence prevented their knowing of the setting so they could be present at trial.

The allegations constitute extrinsic fraud because the acts relate to a matter collateral to the judgment, that is, they relate to the manner in which the judgment was procured. The acts do not relate to the merits of the case, but relate to the manner in which a hearing on the merits was obtained. Freeman on Judgments, § 1233.

██ We have reached the conclusion that the evidence conclusively established there was no fraud, accident or wrongful act on the part of appellee or his attorney. Too, even if there was a wrongful act in failing to actually send notice to the defendants, other than W. Henry Phillips, Jr., it was the negligence of the other parties that prevented their knowing of the setting of the case.

We must review the testimony. The evidence shows that very shortly after citation was served in the case, W. Henry Phillips, Jr., the older of the Phillips brothers who were the sole partners in the paper and box company and sole stockholders in the realty and building company, and the person on whom citation was serv-

ed, with the approval of all of the brothers, employed the Honorable Lewis Cutrer as attorney to represent all of the parties to the suit. Mr. Cutrer timely filed an answer, consisting of a general denial. Mr. Cutrer continued to represent the parties until his withdrawal on November 15, 1956. Mr. Cutrer testified that 98% of his dealings in regard to the case were with W. Henry Phillips, Jr. He met all of the brothers and on one occasion talked a little to two of the other brothers about the case. He spoke to W. Henry Phillips, Jr., about the appellee taking his deposition. A commission to take his deposition had been taken out by appellee on two occasions. W. Henry Phillips, Jr., never made himself available for the deposition. He saw no need to give his deposition. Mr. Cutrer thought his attitude unreasonable. About a week before Mr. Cutrer formally withdrew as counsel, he talked by telephone to W. Henry Phillips, Jr., and told him he was going to withdraw as counsel, and Mr. Phillips should get other counsel. He was prompted to withdraw because of the want of cooperation from his client; he had not received any part of the fee agreed upon; and, he was quite busy with work for the Houston Independent School District. During his employment nothing was ever discussed about who notices concerning the case should be sent to. All brothers were present when he was employed. He assumed Henry was representing all of them. He had difficulty with Henry. Henry was emotional, extreme and abnormal. When the case was set from time to time he did not talk to the brothers. He knew how to get them if he needed them. He never corresponded with other Phillips brothers and they did not correspond with him. On November 21, 1956, Mr. Cutrer wrote a letter to Mr. Henry Phillips transmitting a copy of the order authorizing his withdrawal as attorney. The letter was sent to him at 1100 Elder Street, Phillips Realty and Building Company. The letter told him he should employ other counsel. A copy of this letter was sent to appellee's counsel. The letter was sent by registered mail. 1100 Elder Street is the office of the paper and box company and the realty and building company.

Charles Linden Phillips testified he was vice president of the Realty and Building Company and was a partner in the Paper and Box Company. He knew the suit was filed. He approved Mr. Cutrer's employment. Henry told him he was employing Mr. Cutrer to represent them. He was in the office of defendants when Mr. Cutrer was there. He spoke to Mr. Cutrer and never saw him after this. He would ask Powell Phillips, or, mainly Henry, about the case and would be told it had been put off. In six or eight weeks he would again ask about it and would be told it had been put off. He forgot about it and thought it was over with. No one gave him such idea, it was his own. He relied on the lawyer mainly to notify him of the case. He never asked the lawyer to notify him. He also relied on Powell or Henry. The first time he became concerned about the case was when he learned of the judgment in May, 1957. Litigation didn't come under his jurisdiction. All legal proceedings were under Henry's jurisdiction. From November, 1956, to January, 1957, he knew Henry wasn't in too good a shape around the plant. Henry wasn't in the plant a solid day from November through January. No one opened Henry's mail between November and January. It was put on Henry's desk and taken to him from time to time. He took some of Henry's mail to him. The partners did not open mail addressed to one of the other partners, though he knew some might involve firm business. He expected Henry to tell him if firm business was involved. The partners didn't talk business much. They just expected each to care for his part. There was no "high boss." Henry had charge of the office. The other partners handled production and sales. He and Henry signed checks. While Henry was in the hos-

pital (for hernia operation in 1954) Buddy Waller took checks to him for signature. He had no notice of Mr. Cutrer's withdrawal. He thought the Court would automatically notify him when the case came up. He did not know the procedure for setting cases in Harris County. He never made inquiry about the case at the Court or the Clerk's office. He blames the Court and his lawyer. He did not rely on appellee or his attorney to notify him.

C. Enloe Phillips was a partner and salesman for the partnership. He was vice president of the Realty and Building Company. He saw Mr. Cutrer at the firm office. Powell or Henry had done the negotiating with Mr. Cutrer. He understood Mr. Cutrer was representing them. He did not know of Mr. Cutrer's withdrawal. He did not know whether Henry was at work in November, December, or January, as he was out selling. He was depending on Mr. Cutrer to keep him informed about the case. He felt that if his brothers knew about the case, they would tell him, but he wasn't relying on them. He agreed to Mr. Cutrer's employment. Henry did most of the talking in the employment of Mr. Cutrer. From time to time he would say something to his brothers about the case and they would say it was coming up and then that it had been postponed. He knew the case had not been settled. He was relying on Cutrer or the Court to notify him of a setting. He knew Henry was away from the office a good bit. If mail was addressed to Henry no one opened it. He knew this was the practice in the office. He didn't object to it. He didn't even think about there being unopened letters on Henry's desk. He relied on his attorney to tell him about the case. At one point he said he relied on Henry and his attorney. He meant Henry would tell him if he knew. Henry was supposed to attend to his duties. The witness wasn't around the office much and he didn't know Henry wasn't taking care of his duties. Henry, during November, December and January, was in a bad frame of mind, was

nervous and hard to get along with. Normal office procedure was carried on by Buddy Waller. Buddy was under Henry. Henry had charge of the office. Henry was more or less general manager. He has seen mail stacked high on Henry's desk. There could have been firm business in the mail; he just never gave it a thought. He never inquired of the Court or Clerk concerning the case.

Mr. Powell Phillips was a partner and salesman. He was secretary-treasurer of the Realty and Building Company. He understood Mr. Cutrer was to represent all of them. He did not know of Mr. Cutrer's withdrawal. Henry was nervous, forgetful and high-strung. It was the general understanding that Mr. Cutrer was representing them all. The witness wasn't around the office much in November, December and January, but he understood Henry wasn't taking care of the business. He didn't ask his brothers about the business; he presumed it was being taken care of. He was out looking for customers. He was relying on Henry, more or less, to look after the suit. Henry usually looked after legal matters. Henry was, more or less, understood to be general manager. He blames Cutrer for not letting him know about the case. He never made inquiry of the Court or the Clerk about the case.

W. Henry Phillips, Jr., was president of the Realty and Building Company. He confirmed the other partners concerning Mr. Cutrer's employment. He knew of Mr. Heaner's letter of November 16, which set the case for January 7, sometime in November. He thinks it came to the office. The letter of November 21, 1956, written to him by Mr. Cutrer enclosing a copy of the order permitting Mr. Cutrer's withdrawal wasn't seen by him until May, 1957. It remained unopened on his desk. About a week before Mr. Cutrer wrote the letter of November 21, Mr. Cutrer told him he was going to withdraw. About this time Mr. Heaner called him. Mr. Heaner said he had had the case for some time and

wanted to get a little something for his time. Henry told Mr. Heaner all about the case and he thought Mr. Heaner had dropped the case. Mr. Heaner led him to believe the case was going to be dismissed "or something to that effect." Henry didn't know where he was January 7. On deposition he had said he was in Galveston and forgot about the case. About the time the case was filed (1953) he had a double hernia operation. In November, December and January he was in a rundown condition. He had pains in his right side. He says he was not normal during this time. He would go to the office two or three times a week to sign checks, and would then go home. He blames Mr. Cutrer for his not being at the trial. Buddy Waller was his assistant, to take care of his work when he was out. If correspondence came to him (Henry), no one would open it. Mr. Cutrer told him from time to time about deferments in the case. After Mr. Cutrer told him about withdrawing, he talked to two or three lawyers about employment. They did not take the case. He was trying to sign checks, keep up with the bank account and operate the business. Again he said he got the impression from discussions of the merits of the case with Mr. Heaner that Mr. Heaner was going to drop the case if he didn't get some small amount of money in settlement. When specifically asked if Mr. Heaner told him he was going to drop the case, the witness merely answered he got that impression from a general discussion of the case.

Judge Hunt testified the rules he enforced in his court would require each member of a partnership to be notified of a setting if personal judgment was sought against the partners. Evidence was excluded that the local rules in force when the case was tried required notice to the opposite party. No one could find a copy of the old rules. The Court apparently excluded the testimony because of the best evidence rule. Judge Hunt testified on the bill of exception that the rule required notice to the opposite party or his attorney. We shall assume such rule to be in evidence. Judge Hunt testified Mr. Holloway told him the defendants had been notified of the setting by letter of November 16. He further testified he would not have tried the case but for this representation. Judge Hunt further testified that after any of the parties to cases had announced ready for trial on Friday preceding the week for which set, it was his clerk's duty to notify the parties when the case was actually reached for trial, or on Friday when the docket was called he would tell the parties of the cases to be reached the following Monday. This case was tried on Monday, January 7. We shall assume Judge Hunt told the parties present at the docket call to be present on Monday. None of appellants was present, apparently.

We hold that the only reasonable conclusion that can be reached from the above detailed evidence is that the other defendants than W. Henry Phillips, Jr., made him their agent in handling the suit. Notice to him was notice to them.

The evidence raises no fact issue as to whether Henry was legally capable of attending to business. It only shows that he was nervous, irritable and hard to get along with.

While we are confident we are correct in concluding as a matter of law that Henry was the agent of the other parties, even if it could be said he was not, the defendants are in no better position, because we further are of the view that a reasonable mind could only conclude the defendants were all negligent in not knowing of the setting. If, as two of the defendants said, they were depending on their lawyer to notify them, they were negligent in not making inquiry of him concerning the case. He had sent them notice of his withdrawal by his letter of November 21, but they left this letter unopened on Henry's desk until May, 1957. True, it was addressed to Henry, but the evidence shows the defendants knew letters addressed to him might involve firm business. Henry's apparent inattention to busi-

ness is no excuse. Rather, the other defendants' knowledge of this but adds to their negligence. Here was a registered letter sent to the partner who, with the approval of the other defendants, had hired the attorney, and they left it unopened for seven months. Too, they knew mail was accumulating on Henry's desk.

We find no misrepresentation to Judge Hunt. The notice of the setting sent by appellee's counsel to Henry was notice to all defendants. Too, the other defendants were negligent in not ascertaining the withdrawal of their counsel which would have led to their discovering the case was set. Too, Judge Hunt said it was his clerk's duty to call the parties as to when a case would be reached after announcements.

Henry's conclusion that he was led to believe by Mr. Heaner that the case would be dropped raises no fact issue. He testified to no fact from which anyone could conclude whether Henry or a reasonable person would be justified in concluding Mr. Heaner was going to drop the case. He merely concluded after he gave his version of the merits that Mr. Heaner was going to dismiss the case or do "something to that effect." Though he was specifically asked whether Mr. Heaner told him he was going to dismiss the case, he never directly answered, stating just what Mr. Heaner said.

We have not cited any of the many cases cited by each party. They but announce the rule stated in Alexander v. Hagedorn, supra, and apply the rule to fact situations not comparable to the facts we have before us.

■ Appellants complain that for the first time appellee sued for damages in an instrument filed in April, 1955. The instrument is denominated "Supplemental Petition." They say this cannot be a supplemental petition because in reply to nothing filed by them as defendants, and if it was an amended pleading there was no citation served on them. The instrument is

one paragraph and in effect seeks to recover for breach of contract, alternatively to recover on implied contract. We think the instrument effective for no purpose. However, we think the original petition sufficiently sounds in breach of contract to support the judgment.

We find it unnecessary to pass on appellants' complaint to the exclusion of testimony. If it had been admitted, it would occasion no different disposition of this appeal.

The judgment of the Trial Court is affirmed.