**Frank C. STEWART, Individually and d/b/a Frank C. Stewart Roofing & Sheet Metal Company, Appellant,**

**v.**

**Alfred A. MALEK, Appellee.**

**No. 13501.**

Court of Civil Appeals of Texas.

Houston.

May 5, 1960.

Rehearing Denied Sept. 15, 1960.

Frank J. Knapp, Thomas P. Alexander, Houston, Butler, Binion, Rice & Cook, Houston, of counsel, for appellant.

Hicks, Dollahon, Boss & Wohlt, Willard I. Boss, Houston, for appellee.

BELL, Chief Justice.

This is an appeal from a judgment granted on a motion for summary judgment, refusing to grant a bill of review seeking to set aside a judgment by default rendered in favor of appellee against appellant on March 18, 1958 in the amount of $15,000, because of personal injuries received in an automobile collision.

On May 6, 1958, appellant filed his petition in the nature of an equitable bill of review seeking to set aside the default judgment. He filed his first amended original petition December 9, 1958. In this amended petition appellant alleged that on June 28, 1955, appellee filed suit against him, the cause being No. 454,024. Service of citation was effected on appellant July 1, 1955. Appellant forthwith delivered the citation to his liability insurance carrier. Appellee was represented by counsel from El Campo and also Houston counsel. Mr. Harrington, representative of the appellant's insurer, immediately got in touch with appellee's Houston counsel and an agreement was reached whereby appellee's counsel would settle the case for $600 and would recommend its acceptance by appellee. Houston counsel signed appellee's petition as an attorney of record. Harrington on July 18, pursuant to this agreement between counsel, drew a draft in favor of appellee and the passenger in his automobile, and prepared a release for them to sign. These were delivered to the Houston counsel and were transmitted by him to El Campo counsel. It is alleged that no answer was necessary since there was a settlement agreement entered into before the time appellant was required to answer. It was specifically alleged that Houston counsel agreed with Harrington that no answer need be filed pending a final termination of settlement negotiations. The letter from appellee's Houston counsel to Harrington setting forth the agreement concerning the answer is dated July 19, 1955 and reads as follows:

"Pursuant to our telephone agreement, we hereby agree to an extension of time for the answering of plaintiff's petition in the above case until such time as there is a final termination of pending settlement negotiations. It is our intention at this time to attempt to prevail upon our clients to accept your settlement offer, which we consider fair."

It is alleged that on July 16, 1955, appellee's counsel sent a letter to the clerk of the 127th District Court enclosing a motion and order for dismissal of the case and asked the clerk to have it signed by the judge. A copy of the letter, motion and order was sent Harrington by appellee's Houston counsel. Appellant alleged Harrington relied on the settlement agreement, the extension of time in which to answer and motion and order of dismissal and believed no answer was necessary and the cause had been abandoned and dismissed. It is further alleged that when the releases and drafts had not been returned, Harrington in 1956 and 1957, from time to time, communicated with the Houston counsel about the disposition of the drafts and releases, and Harrington was assured by counsel that the case had been settled and the draft would eventually be cashed and the releases executed and returned. In October, 1957, Houston counsel wrote El Campo counsel making inquiry about what had happened to the case. A reply, written on the bottom of the letter of inquiry, stated: "At client's request and agreement in 1956, we withdrew as his attorneys of record in writing and returned entire file to him (since he ignored our recommendation, etc.). I do not know who is representing him at this time—if anyone."

No one ever advised Harrington or appellant that the claim would be further

pursued and this conduct constituted an implied acceptance of the settlement or abandonment of the claim. Harrington, because of these facts, thought the case was dismissed and no answer was necessary.

It is then alleged that appellee, unknown to Harrington, obtained other Houston counsel and default judgment was taken March 18, 1958. It is alleged that the file was delivered by appellee to his new counsel and it contained information that put him on notice as to why no answer had been filed and counsel knew or reasonably should have known that appellant and Harrington had been lulled into a sense of security with regard to the status of the claim. It is alleged that counsel, under such circumstances, should have notified appellant or Harrington that he was activating the claim and his failure to do so constituted legal fraud. Appellant was not notified that judgment had been taken until April 26, 1958, after it had become final.

A meritorious defense is alleged and proven and such is not contested and is thus not an issue on appeal.

Appellee filed his motion for summary judgment, asserting that based on the pleadings, affidavits and admissions there was no genuine issue of fact to be determined, but these establish as a matter of law that appellant was negligent in not filing an answer and, as a matter of law, these establish the absence of any fraud or wrongful act on the part of appellee or his attorney which caused appellant not to answer.

Attached to the motion is an affidavit by appellee and his attorney who took the judgment.

The substance of appellee's affidavit is that sometime in July 1955, his El Campo attorneys called him to their office and told him of the proposed settlement and his Houston counsel wrote urging him to accept it. He told his El Campo attorneys it was not enough money and he would not

accept it. Nothing happened until June, 1956, when he agreed that his then attorneys might withdraw as counsel. Eight months later, in 1957, he employed another El Campo attorney and turned his file over to him. The whole file had been given him by his first counsel. His El Campo attorney was unable to get Houston counsel he wanted to assist him. In December, 1957, he got his file back from his second counsel and in January, 1958, he procured Houston counsel to whom he delivered his file. Thereafter judgment was taken. No one representing appellant ever talked to him about settling the case.

The attorney who finally represented appellee attached to the motion his affidavit stating in substance that appellee and his brother-in-law talked to the attorney about the case in January, 1958. The attorney, after accepting employment, checked the papers in the Clerk's office and was surprised to find no answer had been filed. He had looked though the papers in the file that was turned over to appellee by his attorneys who had withdrawn from the case and satisfied himself "there was no agreement as to an extension of time for answering which could by any logic be considered still operative." He then routinely filed a motion for default judgment on March 18, 1958.

Appellee had filed requests for admissions, which were answered. These admissions, so far as we deem them material here, were in substance as follows:

1. Under date of July 13, 1956, Harrington noted in his office file that on July 18, 1955, he effected a settlement of the claim for $600; that appellee's attorney gave him a letter granting an indefinite time in which to file an answer so the insurer would not have to incur the expense of filing an answer. The attorney from time to time advised him that he was unable to get his client to accept this amount. The attorney told him that he had agreed on the amount of the settlement and that he (Harrington) could rely on

the fact that the case was settled and at such time as the attorney could get his client to agree the draft would be sent through.

2. On September 5, 1957, Harrington noted in his file that there had been no developments since July 13, 1956. Several times during the year past he had talked to appellee's Houston counsel and counsel assured him the matter was settled but the client had not agreed to accept the draft. The attorney advised that he would not proceed further and that eventually the client would accept the draft. Harrington noted there was nothing to be done but let the matter alone.

3. At no time did Harrington contact appellee about settlement or disposition of the case.

4. Harrington was in touch with the original attorneys for appellee about the case.

5. Appellant himself never did anything about the case after he turned the citation over to his insurer. Harrington was his representative in handling the case.

The deposition of appellee was taken and is before us as a part of the record considered by the trial court. We will notice only those parts of the deposition that bear on the issues before us. Most of the deposition deals with the merits of the controversy which is not in issue here. Appellee testified substantially the same in his deposition as he did in his affidavit to the extent it covered the matters shown in the affidavit as recited above. Additionally he stated he had the file in his possession from the time his original attorneys returned it to him in June, 1956, until he turned it over to his second El Campo attorneys. He thought the whole file was turned over to him. He read some of the papers in the file but did not pay any attention to what was said. He was specifically asked if he saw an order of dismissal in the file. He answered, "Well, Mr. Duckett told me that in the office, that

Helm and Jones had dismissed the case; in other words that they wouldn't carry the case." He thought the draft was in the papers. It was still in the papers (when the deposition was taken). He did not know whether an order of dismissal was in the file. He never cashed the draft or returned it to the insurer. He had never told appellant, the insurer or its representative that he would not accept the settlement and would continue with the case. He turned the file over to his attorney, Mr. Boss, who took the judgment. Mr. Boss did not advise him no answer had been filed.

The trial court, on the basis of the above, granted the motion for summary judgment against appellant, thus holding, as a matter of law, that appellant showed no ground for setting aside the default judgment.

■ In determining whether a summary judgment should be granted, the court must determine whether there is any issuable fact. In determining this every reasonable inference is to be drawn favorably to the party resisting the motion for summary judgment. Every doubt as to the existence of a fact issue is to be resolved against the movant. Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929; McDonald, Texas Civil Practice, Sec. 17.26.

■ In order for a party to successfully maintain an equitable bill of review seeking to set aside a default judgment, he must allege and prove the following:

1. A meritorious defense to the cause of action alleged to support the judgment.

2. That he was prevented from filing an answer by the fraud, accident or wrongful act of the opposite party.

3. That the fraud, accident or wrongful act of the opposite party was the cause of the default, unmixed by any fault or negligence of his own.

See Alexander v. Hagedorn, 148 Tex. 565, 226 S.W.2d 996; Garcia et al. v. Ramos et

al., Tex.Civ.App., 208 S.W.2d 111, writ ref.; Phillips et al. v. Hopwood, Tex.Civ. App., 329 S.W.2d 452, n. r. e.

This case being one where the party resisting the bill of review moved for a summary judgment, it is necessary to determine whether on a basis of the pleadings, the affidavits on file, the depositions and the admissions of the appellant, appellant was not, as a matter of law, entitled to have the default judgment set aside. Appellee asserts he was not because these establish as a matter of law negligence on the part of appellant or his representative that caused or contributed to the default judgment, and, the absence of any fraud or wrongful act on the part of appellee or his representative, because there was no duty owed by them to the appellant to notify him he should file an answer.

We have reached the conclusion that fact issues were raised and the trial court erred in granting the motion for summary judgment.

First, we will analyze the above evidence to determine whether there was evidence from which a jury might with reason conclude that it was wrongful and thus a legal fraud for appellee or his counsel who took the default judgment not to notify Mr. Harrington that the proffered settlement would not be accepted.

■ It is shown that original counsel for appellee, by letter confirming an oral agreement, promised Mr. Harrington, appellant's representative, that he need not file an answer until such time as there was a final termination of pending settlement negotiations. Too, the letter stated the settlement offered was considered fair by the attorney and he would recommend its acceptance. This letter was dated July 19, 1955. A draft was drawn in favor of appellee and the passenger in his automobile and delivered to appellee's counsel, together with releases to be signed. In the interim between this date and October, 1957, Harrington made inquiry about the draft and was told

the appellee had not agreed to accept the settlement but counsel felt in time he would and the draft would be coming through. The letter of October, 1957 was written by Houston counsel to El Campo counsel inquiring about disposition of the case. On the bottom of the letter El Campo counsel wrote that by agreement they had withdrawn and returned the file to appellee. The note also stated the withdrawal was because appellee ignored counsel's recommendation. Up until the time of the October letter we think there can be no question that any counsel for appellee would be under a duty before taking a judgment to notify Harrington the client had refused to accept the settlement and that negotiations for settlement would not proceed further. The problem is to determine in the light of all facts and circumstances whether as a matter of law the letter had the effect of notifying Harrington there had been a final termination of negotiations by a refusal of the appellee to accept the settlement. The file was returned to appellee. Presumably it contained a copy of the letter by which the time was extended in which to file an answer. This is not denied and Mr. Boss' affidavit merely states there was nothing granting an extension of time which could by any logic be still effective. This shows he was aware that an extension had once been granted. The only extension was by this letter of July 19, 1955. The *whole* file had been returned to appellee and he turned it over to Mr. Boss in January, 1958. In the file was the draft and the releases. When Mr. Boss received the file and saw that appellant's representative had been promised by appellee's original counsel that no answer need be filed until a *final* termination of pending settlement negotiations, and when he found nothing in the file definitely notifying Mr. Harrington that the client refused to accept the settlement, and when he found the draft still in the file of appellee, and when he then discovered that no answer had been filed, we think a jury could with reason conclude that an attorney would recognize that Mr.

Harrington or appellant had been lulled into a sense of security by the acts of preceding counsel of appellee and appellee by not returning the draft, and he had a duty to notify appellant or his representative that the settlement would not be accepted, thereby finally terminating settlement negotiations. The failure to do this was a wrongful act, which together with the promised extension of time constitutes legal fraud.

We do not of course mean to say that a jury would reach such a conclusion. We merely hold that it could with reason do so, and therefore there was a fact issue.

Assuming a duty on the part of appellee and counsel, appellant must show himself free from negligence that contributed to the default judgment. If under the evidence above set out, it can be said that a jury with reason could conclude that Harrington and appellant were not negligent, then there is a fact issue.

Harrington, after he was given an extension of time to file an answer until settlement negotiatons had *finally* terminated, made inquiry from time to time through appellee's Houston counsel, and while he was told appellee had not agreed to accept the settlement he was assured that counsel thought he would and the draft would be coming through. When Harrington received the letter of October, 1957, together with the reply of El Campo counsel written at the bottom, he of course was informed that appellee had *ignored* his counsel's recommendation. He was not informed, however, that appellee had definitely refused to accept the settlement. Too, in this connection this was the first Harrington knew of the withdrawal of original counsel in 1956. So he could conclude that at least nine months had passed and appellee still had the draft and was still trying to decide whether to accept the settlement. He had never returned the draft and never notified Harrington he would not accept it. A person could have reasoned that, since appellee still had the draft and had done nothing for a year after the file was returned to him by his counsel, he was having difficulty because of the lack of quality to his law suit in getting counsel to represent him and he was keeping the draft so he could cash it if he could not get counsel to represent him. Further, a person could reason that any lawyer who might accept employment, seeing the draft in the file and the letter granting an extension of time to answer until final termination of pending settlement negotiations and finding no letter or copy in the file declining the settlement, would notify Harrington before proceeding further.

A jury might not reach such a conclusion, but a jury could with reason conclude that a person so reasoning was under the facts and circumstances acting as a prudent person. Thus, a fact issue of negligence is raised.

The judgment of the trial court is reversed and the cause is remanded.

## On Motion for Rehearing

On motion for rehearing appellee complains that we disposed of the case on a theory not relied upon by appellant. He says we held Mr. Harrington, appellant's representative, was not negligent in not having an answer filed because appellee's former counsel had granted an extension of time in which to answer, the time being extended until such time as there had been a final termination of settlement negotiations. But, appellee says, appellant was not contending this but was contending he, through his representative, Mr. Harrington, thought the case had been dismissed. His argument on the matter of dismissal is that the evidence shows Mr. Harrington had no right to believe and did not believe the case had been dismissed because the writing of the letter granting an extension of time to answer shows the case was still pending else there would be no need for an answer.

We have reviewed the pleading of appellant and think it is subject to the

·construction that appellant did not file an answer because Mr. Harrington, his representative, thought the case had been dismissed because of the letter and order relating to dismissal; or that the claim had been abandoned; or that no answer need be filed until pending settlement negotiations had finally terminated since appellee's counsel had given a letter of extension. We have no way of knowing what was argued in the trial court, but the pleading supports the theory on which we disposed of the case. Too, the evidence introduced by appellee through appellant's admissions tends to establish a reliance by Mr. Harrington on the extension of time given by appellee's counsel. On appeal the Point of Error is that the Trial Court erred in rendering a summary judgment because fact issues were raised. It is true that appellant's brief, while discussing all of the evidence, contended that a fact issue was raised concerning whether Mr. Harrington thought and had a right to think the case had been dismissed. However, the real issue in a summary judgment proceeding even on appeal is whether under the pleadings, depositions, affidavits or admissions, that are in evidence, fact issues are raised. We think that under the Point of Error that there was evidence raising fact issues, assigned by appellant, it is our duty to examine the pleadings, depositions, affidavits and admissions and determine if a fact issue was raised.

In the state of the record as presented to us, we had doubt that it showed a reliance by Mr. Harrington on dismissal of the case because the other evidence affirmatively showed through the above quoted admissions that he was relying on the extension of time given in which to file an answer. There was no affidavit filed by Mr. Harrington. We cannot consider the sworn pleading of appellant's counsel as establishing the facts sworn to because it shows on its face counsel was not in a position to testify to such facts as a witness as required by Rule 166–A, Texas Rules of Civil Procedure. We, of course, do not know what

facts will be developed on trial on the merits. We do hold, however, as stated in our opinion on original submission, that fact issues were raised.

Appellee's motion for rehearing is overruled.