OPINION
KENNEDY, Justice.
Appellant was employed by appellees to act as manager of the Padre Staples Mall in Corpus Christi, Texas, during the years of 1972-77. Appellees sued appellant, alleging violations of their oral employment agreement, conversion, fraud and breach of fiduciary duty. The jury returned a verdict in favor of appellees, setting actual damages in the amount of $52,474.00 and exemplary damages in the amount of $100,-000.00. Pursuant to appellees’ Motion for Judgment, the trial court awarded an additional $42,644.00 in actual damages.
During the time appellant was employed by appellees as manager of the Padre Staples Mall (the Mall), he engaged in a number of activities which appellees claim violated the trust relationship they had with him.
In 1972, appellees Roy Smith and Ennis Joslin, the then owners of the Mall, hired appellant to manage the Mall. The scope of his duties and authority was not written, but it is agreed that appellant was to be in charge of the day-to-day operation of the Mall and that appellant did not have authority to sign leases.
Evidence was presented regarding the following specific transactions:
A. Brock Watson
Watson was a piano concessionaire at the Mall. He gave appellant “$500.00 at a time to take out the merchants and buy them lunch and keep them off of his neck so he could stay in there,” for a total of $2,500.00. This was done in an effort to keep down complaints about the noise which accompanied his piano business.
B. Pat Harral — Jeffery Burnham — Jesse Ruiz — Mall “Game Room”
Jeffery Burnham operated “The Mall Game Room.” He desired to terminate his business.
Pat Harral is appellant’s son-in-law. Appellant arranged for Harral to purchase Burnham’s leasehold improvements and trade fixtures for $4,000.00. However, Burnham’s lease specifically stated that all leasehold improvements were the property of the Mall owners.
Later, Harral removed some of the trade fixtures and sold the remaining equipment *342 and the leasehold improvements to Ruiz for “around $7,000.00.”
C. Eldon Allen Piano — Organ Display Area
Allen owned a retail piano and organ business. He desired a small display area in the Mall. He negotiated with appellant, who set the terms of payment at $200.00 per month to the Mall. In addition, $100.00 per month was to be paid to appellant “as a fee” for his services “in the way of promotion and advertising.” Allen testified that appellant did nothing for Allen’s business other than in appellant’s role as Mall manager. The payments to appellant totaled $2,800.00.
D. Eldon Allen Piano — Organ Tenant Improvements
Prior to the transaction described above, Allen had a lease with the Mall. At the end of the lease, Allen desired to recoup his investment in his leasehold improvements. Appellant arranged a sale of those improvements to the subsequent tenant in that space for $9,000.00. Of that $9,000.00, $5,000.00 was paid to appellant as a “commission.”
E. Charles Hills — Mall Show Profits
Hills desired to hold arts and crafts shows in the Mall on Sundays. He contacted appellant, who arranged with appellees to permit the shows. Hills was to pay one dollar per table, arrange to have the tables set up and taken down and arrange for clean-up of the Mall. The Mall provided the tables. Hills “split half of my profit” with appellant “after all expenses were paid.” Hills testified that he gave half of the profits to appellant for “providing a place for me to have this show.” During 1974-1977 appellant received $13,047.00 from Hills.
F. Payment of $1,000.00 by Charles Hills
Hills also desired permanent space in the Mall. A partnership was set up; appellant put in $750.00 and Hills put in $1,025.00. A kiosk was obtained. Hills desired additional space for the store. When approached, appellant conditioned the rental of the space upon appellant receiving $1,000.00. Hills later desired to end the partnership and bought out appellant for $750.00 plus $400.00.
G. Robert Upton — Game Machines in Mall
Upton desired to place game machines in the Mall. He approached appellant. Appellant arranged that the man who ran the shoe shine stand would receive $20.00 per week for watching the machines. The “Mall rent” was “set at a hundred” a week. Appellant was paid “a hundred a week also, sort of a — protection money, more or less to keep the owners and the rest of the merchants off my neck, ...” Appellant received approximately $13,000.00 over two and one-half years.
H. Sale of Robert Upton’s Mall Information Booth to Harold Poozer
Upton also had a location in a kiosk. He used the space to dispense change. He also ran the Mall public address system as a public service. He was allowed to operate rent free for four months, then paid a flat rate rent. He purchased the leasehold improvements from the former tenant and sold them to Harold Poozer when he terminated his business for $4,000.00, making a $2,000.00 profit.
I. Douglas Hoskins’ Occupancy of Boutique Space
In 1972, Helen Cooley built a kiosk in Padre Staples Mall, known as No. 32. In January of 1973, she moved her business to a “permanent store” in the Mall. Hoskins purchased the space for $2,550.00. $2,000.00 was paid in cash. A second check for $430.00 was returned for insufficient funds. Appellant gave Cooley $550.00 and took the bad cheek.
After operating his business out of Kiosk No. 32 for awhile, Hoskins expanded into No. 33. No. 33 was constructed for Hos-kins by Victor Dennis. The building was to *343 be paid for by appellant, and Hoskins would pay appellant.
J. Douglas Hoskins’ Conveyance of Jaguar to Appellant
Hoskins, as a part of other business dealings, obtained a Jaguar automobile from out-of-state. Appellant was a collector of automobiles. Hoskins transferred the automobile to appellant by power of attorney. In addition, Hoskins paid for repairs to the car after transferring it to appellant. The repairs cost approximately $2,000.00. The car was from “a non-title state.” The transfer was to be in payment of the kiosk, including some rent. Subsequently, Hos-kins took the car to a bank and obtained a loan, using the ear as collateral. Appellant attempted to obtain title and found out the bank had already done so. Shortly thereafter, Hoskins left town. Later, it was determined that the Jaguar had been stolen. Appellant ended up making payments to an insurance company in order to retain possession of the Jaguar.
K. Douglas Hoskins’ Display Table for Onyx
After returning to the area, Hoskins, together with others, set up a table in the Mall for “a couple of weeks” to sell “some ashtrays and chess sets and stuff of that nature.” Hoskins did not pay any rent, but gave appellant some money “because I appreciated what he had done ... It might have been as little as $10.00 ...” or as much as $600.
L. Al’s Formal Wear Kiosk
Al’s purchased a kiosk in the Mall from appellant. Appellant issued a Bill of Sale, including a repurchase agreement obligating appellant to repurchase the kiosk for $4,750.00.
Subsequent to appellant’s termination at the Mall, Al’s attempted to enforce the repurchase agreement on appellees. A lawsuit was filed, resulting in a settlement whereby appellees paid Al’s $4,750.00 and received an assignment of Al’s cause of action against appellant.
Victor Dennis d/b/a D and M Construction constructed some of the kiosks and did other construction work at the Mall. He testified that he used materials from old kiosks to build new ones; that, among others, he built Al’s Formal Wear; that his bill for Al’s was $1,560.00; that Doug Hoskins paid $780.00 before he left town. Much later he received $100.00 cash from Hos-kins. He received no further money from either Hoskins or appellant.
M — N. Dana Green — Mission Craft and Sara Cook — Carriage House
Subsequent to the transactions described above, appellant “sold” Kiosk No. 32, together with its leasehold improvements, to Dana Green d/b/a Mission Craft. Also, appellant “sold” Kiosk No. 33, together with its leasehold improvements, to Sara Cook d/b/a Carriage House.
O. Mr. Ramirez d/b/a The Wooden Flower Shop
Mr. Ramirez had a flower cart in the Mall. Appellant managed the cart for him. Appellant received approximately $3,450 from Ramirez.
P. Eugene Smith d/b/a Tiara World of Gifts Commission Paid to Appellant
Eugene Smith had a lease with the Mall. His business was not prospering, and he desired to sublet his space. Subletting was prohibited by his lease, but appellant assisted him in obtaining subleases. As a part of this transaction, Eugene Smith paid appellant a commission of $1,200.00 for his help.
Q. Eugene Smith d/b/a Tiara World of Gifts Sublease Profits .
In connection with the above transaction, appellees allege “lost profits” from the subleases improperly signed by appellant. Appellant did not have authority to sign leases or permit subleases. From May, 1976 to December, 1977, Eugene Smith received $600.00 per month from subtenant Trice. From June, 1976 to December, 1977, *344 Eugene Smith received $600.00 per month from subtenant S.P. Smith. During this time, Eugene Smith was paying, as rent to the Mall, $500.00 per month plus $40 per month for services. This resulted in Eugene Smith receiving profits in excess of $10,000.
R. Monies Paid by Victor Dennis to Appellant
Dennis d/b/a D and M Construction built some of the kiosks in the Mall. At times, he paid appellant a finder’s fee, but Dennis testified that appellant never requested any monies. Appellant “put me on several good jobs outside that Mall.” Dennis may have paid two or three hundred dollars in finder’s fees for work done at the request of tenants in the Mall, which would not have been under appellant’s supervision.
S. Monies Paid by Bill Ochse to Appellant
Ochse is an electrician who did construction work at the Mall. Ochse paid appellant “a finder’s fee” when appellant, a licensed real estate agent, helped Ochse sell Ochse’s personal residence. Ochse did some work at appellant’s house and never charged appellant as “a courtesy.”
T. Monies Paid by Howard Hill to Appellant
Hill had an agreement to pay appellant a 10% commission if appellant located work with any of the tenants of the Mall for Hill. Appellant never referred any tenant work or any other work to Hill. Hill never paid appellant any monies.
U-V. Durham Interest, Inc. Sublease Profits
Durham had a lease with the Mall. His business was failing, and he desired to sublease his space. Subletting was prohibited by his lease, but appellant assisted him in obtaining subleases. Durham received rent in excess of $66,548.00 and paid rent in the approximate amount of $47,000.00. Appellees allege these profits are rightfully theirs.
Appellees assert that the above described transactions were in violation of their oral employment agreement and constitute conversion of appellee’s property, fraud and a breach of appellant’s fiduciary duty to ap-pellees.
In their answers to special issues, the jury found that appellant breached his fiduciary duty to appellees in transactions A, C through P and T; that appellant intentionally failed to reveal to appellees that he received monies from certain tenants and suppliers in transactions A through P, R, S and T; that appellant intentionally failed to reveal the existence of the Durham and Tiara subleases (Transactions P, U and V); that appellant breached his employment agreement with regard to transactions A, C, E, F, G, I, K, L, M, N, P, Q, T, U; and, that the following transactions were outside the scope of the agency relationship between appellant and appellees: A, C through H, J, M, N, P, T. The jury found damages as follows:
$13,000 G. Robert Upton, Game Machines
1,500 I. Hoskins’ Occupancy of Boutique Space
K. Hoskins’ Display table for Onyx r* CM
L. Al’s Formal Wear Kiosk o lO t-
1,200 P. E. Smith d/b/a Tiara Commission
7,900 Q. E. Smith d/b/a Tiara Sublease Profits
24,100 U. Durham Sublease Profits
The jury refused to award damages m all other transactions. The trial court, however, based upon the finding that appellant breached his fiduciary duty, awarded an additional $42,644 in damages. Appellant perfected his appeal and brings forward thirteen points of error.
Appellant, by his twelfth point of error, complains that the jury’s answers to Special Issues Nos. 19 and 20 should have been disregarded because appellant’s defense of laches was established as a matter of law. Special Issue 19 inquired if appellees had unreasonably delayed filing this lawsuit, and Special Issue 20 inquired if appellant *345 had changed his position to his detriment during the delay. The jury answered both questions in the negative.
Generally, in the absence of extraordinary circumstances which would render inequitable the enforcement of petitioner’s right after a delay, laches will not bar a suit short of the period set forth in the limitation statute. Barfield v. Howard M. Smith Co. of Amarillo, 426 S.W.2d 834 (Tex.1968). The circumstances alleged by appellant in his brief are 1) appellant’s own loss of memory; 2) appellant’s inability to review documentary evidence; and 3) ap-pellee’s ability to exert coercive economic pressure on witnesses who were still tenants in the mall. The second concern of appellant is addressed by our discovery rules and should not be affected by time unless the records were destroyed. See TEX.R.CIV.P. 166 et seq. In this case, there was no showing that the records were unavailable. The third concern, likewise, does not appear to be affected by time. The first concern is one of the policy reasons behind the statute of limitations. See Gaddis v. Smith, 417 S.W.2d 577 (Tex.1967). We, therefore, conclude that the circumstances of this case are no more extraordinary than any case filed within the statute of limitations. See Barfield, 426 S.W.2d at 840. Appellant’s twelfth point of error is overruled.
Appellant, by his first point of error, complains that the trial court erred in entering its judgment because the evidence conclusively shows that some of appellees’ causes of action were barred by the two-year statute of limitations.
Appellee’s Original Petition was filed on April 4, 1979. On that date, TEX. REV.CIV.STAT.ANN. art 5526 (Vernon 1958) provided that actions for injury to the property of another, for detaining or converting the property of another and for debt, where the indebtedness is not evidenced by a writing, must be commenced within two years after the cause of action accrued.[1] However, where the conduct complained of includes factors of fraud and deceit, the statute of limitations does not begin to run until the complainant has discovered the fraud or has learned of facts sufficient to put a person of ordinary prudence on inquiry and which, if pursued, would have led to discovery of the fraud or deceit. Pena v. First State Bank & Trust Co., 404 S.W.2d 56 (Tex.Civ.App.—Corpus Christi 1966, no writ).
Appellees disclaim any notice of the Durham Interest, Inc.’s and Eugene Smith d/b/a Tiara World of Gifts’ subleases until the termination of appellant as Mall manager in December, 1977. Appellees assert, and the court instructed the jury that, as a matter of law, a fiduciary relationship existed between the appellant and the appel-lees. The effect of this relationship was recently addressed by the Fort Worth court:
It is well settled that fraud prevents the running of the statute of limitations until it is discovered, or by the exercise of reasonable diligence it should have been discovered. When there is a fiduciary relationship between the parties, however) diligence on the part of the defrauded party does not require as prompt or as searching an inquiry into the conduct of the other party as when the parties were strangers or were dealing at arm’s length. This is so because by entering into fiduciary relations the parties consent as a matter of law to have their conduct measured by standards of finer loyalty as exacted by equity courts.
The fact that parties are fiduciary does not, however, change the rule that diligence is required in discovering the fraud. Rather, the fiduciary relationship is merely one of the circumstances to be considered in determining whether fraud might have been discovered by the exercise of reasonable diligence. Such a relationship is an evidentiary matter bearing *346 on the issue of whether the defrauded party acted as would a person of ordinary prudence in discovering the fraud. The existence of a fiduciary relationship thus does not justify a party’s failure to take any precautions to protect against fraud.
We hold, therefore, that the fact that the [parties] were involved in a fiduciary relationship did not as a matter of law toll the running of the ... statute of limitations until the fraud was actually discovered. Although the existence of the fiduciary relationship reduced the degree of diligence with which the appellants were required to act in discovering fraud, it did not eliminate the requirement of diligence. Thus, in order to toll the statute of limitations until the time of discovery, the appellants were required to act with the degree of diligence expected of a reasonably prudent fiduciary in attempting to discover fraud. They could not merely rely on the existence of the fiduciary relationship to toll the statute until such time as the fraud was actually discovered. (Citations omitted.)
Andress v. Condos, 672 S.W.2d 627, 630 (Tex.App.—Fort Worth 1984, writ ref'd n.r.e.).
What constitutes reasonable diligence to discover fraud is ordinarily a question of fact for the jury; however, if the evidence is such that reasonable minds may not differ as to its effect, then whether a party has exercised due diligence is a question of law. Ruebeck v. Hunt, 142 Tex. 167, 176 S.W.2d 738 (1944); Birdwell v. American Bonding Co., 337 S.W.2d 120 (Tex.Civ.App.—Fort Worth 1960, writ ref'd n.r.e.) (cert. denied, appeal dismissed 367 U.S. 904, 81 S.Ct. 1920, 6 L.Ed.2d 1250). Although the jury found in Special Issue No. 11 that the appellees did not know nor should have known by the exercise of reasonable diligence that the appellant, or tenant, was receiving monies or profits prior to April 4, 1977, we find as a matter of law that the appellees had such notice of the facts as to put a reasonable person on inquiry and a failure to discover the activities of appellant and the tenants before April 4, 1977, constitutes a lack of due diligence as a matter of law.
Every partner is an agent of the partnership. Grimm v. Rizk, 640 S.W.2d 711 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.), cert. denied 464 U.S. 1045, 104 S.Ct. 714, 79 L.Ed.2d 177; TEX.REV.CIV.STAT.ANN. art. 6132b § 9(1) (Vernon 1970). Notice to any partner of any matter relating to partnership business is notice to the partnership. Phillips v. Hopwood, 329 S.W.2d 452 (Tex.Civ.App.—Houston 1959, writ ref’d n.r.e.); TEX.REV.CIV.STAT. ANN. art. 6132b § 12 (Vernon 1970).
The evidence in this case showed that appellee Bevly testified that he saw the Tiara World of Gifts’ space being cut up into smaller spaces. Appellee Smith saw the Durham Interests, Inc.’s space being cut up.
Subleases entered into by Mall tenants Tiara and Durham were introduced showing commencement dates of July 1, 1975, November 5, 1975 and November 26, 1976. These subleases were notarized by the Mall bookkeeper and filed in the Mall filing cabinet. Both appellees testified that appellant did not have authority to sign leases. Ap-pellee Bevly testified that he saw the Tiara subtenants open for business in the Mall, that he knew someone was in the Durham space and that he had not signed leases with parties using the names displayed on the front of the stores. We hold that this evidence alone is sufficient to conclusively prove that appellee Bevly had notice of facts sufficient to put a reasonable person on inquiry. A failure to discover the truth of appellant’s activities under these circumstances constitutes, as a matter of law, a lack of due diligence.
Appellant testified that all Mall records, including leases, subleases and other documents, were available to appellees in the Mall office. Steve Odanovich testified that Craig’s House of Music, as sublessee to Durham, opened for business on November 15, 1975. John Trice testified that Island Surf-N-Wear, as sublessee to Tiara, opened *347 for business in May of 1976. S.P. Smith, as sublessee to Tiara, opened for business in June of 1976. We, therefore, conclude that appellees, as a matter of law, had notice of appellant’s actions regarding the Durham and Tiara subtenants before April 4, 1977, and the cause of action was not commenced within two years of its accrual.
Appellant’s first point of error is sustained.
By his second point of error, appellant complains that the trial court erred in submitting different forms of the same factual inquiry to the jury in Special Issues Numbered 1, 3, 5, 6 and 7. Appellant argues that the charge prejudiced him by placing such an undue emphasis upon appellees’ asserted right of recovery as was reasonably calculated to cause the rendition of an improper judgment in this case.
The submission of multiple issues raising the same factual inquiry is erroneous. Holmes v. J.C. Penney Co., 382 S.W.2d 472 (Tex.1964). The relevant special issues are as follows:
SPECIAL ISSUE NO. 1
Do you find from a preponderance of the evidence that Defendant Carroll Wakefield breached his fiduciary relationship with Plaintiffs during the period from 1972 to 1977?
Answer “We do” or “We do not” for each of the below listed tenants or providers of goods or services: (Please put a check mark in the appropriate column.)
(Nineteen enumerated transactions)
SPECIAL ISSUE NO. 3
Do you find from a preponderance of the evidence that Defendant Carroll Wakefield intentionally failed to reveal to Plaintiffs that he received monies from certain tenants and suppliers of material and labor at Padre-Staples Mall?
Answer “We do” or “We do not” for each of the below listed tenants or providers of goods or services: (Please put a check mark in the appropriate column.)
(Nineteen enumerated transactions)
SPECIAL ISSUE NO. 5
Do you find from a preponderance of the evidence that Defendant Carroll Wakefield intentionally failed to reveal to Plaintiffs the existence of the Durham sublease agreements?
Answer “We do” or “We do not.”
SPECIAL ISSUE NO. 6
Do you find from a preponderance of the evidence that Defendant intentionally failed to reveal to Plaintiffs the existence of the Eugene Smith — Tiara sublease agreements?
Answer “We do” or “We do not.”
SPECIAL ISSUE NO. 7
Do you find from a preponderance of the evidence that Defendant Carroll Wakefield breached his employment agreement with Plaintiffs during the period from 1972 to 1977?
Answer “We do” or “We do not” for each of the below listed tenants or providers of goods or services: (Please put a check mark in the appropriate column.)
(Twenty-one enumerated transactions)
Appellees, in their brief, assert that each of the issues set forth a different inquiry. Special Issue Number 1, appellees argued, inquired about appellant’s breach of fiduciary obligations. Special Issue Number 3, says appellees, is a fraud issue. Special Issue Number 7, according to appellees, is a breach of contract issue. Appellees then argue that the inconsistent answers prove that the issues were different. However, we agree with appellant that these issues raise the same factual inquiry. The jury was instructed that appellant was “a fiduciary of (appellees) in respect to matters dealing with Padre-Staples Mall during the period in question.” Based upon the pleadings and evidence, that fiduciary relationship could only arise out of the employment agreement. This breach of the employment agreement (Special Issue No. 7) and breach of the fiduciary relationship *348 (Special Issue No. 1) are essentially identical. Likewise, the activities which constituted a breach of the employment contract were specifically receiving monies from tenants and suppliers as inquired about under Special Issue No. 3 and the making and concealing of the subleases inquired about under Special Issues Nos. 5 and 6. Thus, the submission of Issues 1, 3, 5, 6 and 7, which together raise the same factual inquiry three times, was error.
In order to constitute reversible error, the appellant must demonstrate harm. Boatland v. Bailey, 609 S.W.2d 743 (Tex.1980); Holmes v. J.C. Penney Co., 382 S.W.2d 472 (Tex.1964). Tex.R.Civ.P. 434. The harm, appellant asserts in his brief, is that the submission of different forms and shades of the same inquiry places such undue emphasis on the single issue in this case, whether or not appellant violated his duties to appellees, as to cause jury confusion. See Boatland, 609 S.W.2d at 750. As Justice Norvell of the San Antonio Court said:
A trial court is admittedly vested with a wide discretion in selecting the method and issues to be employed in submitting a case to a jury_ However, the discretion of the trial judge is not absolute, nor is the general rule without limitation or qualification. Whenever a party’s right to a clear-cut submission of his theories of recovery or defense is unduly prejudiced by the use of excessive and unnecessary issues, a reversal of the judgment must be ordered.
H.E. Butt Grocery Co. v. Johnson, 226 S.W.2d 501, 506 (Tex.Civ.App.—San Antonio 1949, writ ref'd n.r.e.). That jury confusion existed is clear by the various and inconsistent answers given to Special Issues Nos. 1, 3, 5, 6 and 7.[2]
The submission of these special issues, which inquired of the jury regarding the same fact three times, was erroneous and harmful and, thus, constitutes reversible error.
Appellant’s second point of error is sustained.
By his third point of error, appellant complains that the trial court erred in awarding appellees damages as a result of the transactions inquired about in certain special issues after the jury found no damages.
The jury found that, regarding the “Brock Watson”; “Eldon Allen Display”; “Eldon Allen Tenant Improvements”; “Charles Hill Mall Show”; “Charles Hill’s $1,000 Payment”; “Robert Upton Sale of Information Booth to Booser”; “Hoskins’ Conveyance of Jaguar”; “Dana Green Kiosk”; “Sara Cook Kiosk” and “Monies Paid by Howard Hill” transactions, the ap-pellees had sustained no damages. Despite this finding, the trial court awarded to ap-pellees $195,118. This amount is $42,644 over and above the $152,474 awarded by the jury. This additional award constitutes a judgment n.o.v. in favor of appellees.
To sustain trial court’s granting of respondent’s motion for judgment notwithstanding the verdict, it must be determined that there is no evidence to support jury findings and, in making that determination, this Court must review the record in a light most favorable to the jury findings considering only the evidence and inferences which support them, and rejecting the evidence and inferences contrary to the findings. Williams v. Bennett, 610 S.W.2d 144 (Tex.1980).
Appellant testified that he had received $2,500 from Brock Watson for services rendered; that he had received $2,400 from Eldon Allen for advertising services; that he had received a $5,000 commission from Eldon Allen when he sold his tenant improvements; that he had received $1,000 from Charles Hill as a commission for ob- *349 taming a lease for Mr. Hill in another mall; that he had received $13,047 from Hill as a result of a partnership with Mr. Hill; that he had received $6,250 from Sara Cook, $3,750 from Dana Green, and a Jaguar from Douglas Hoskins, but that he did not personally benefit from these receipts; that he had received $1,000 from Robert Upton upon the sale of the flower stand as a result of his partnership with Upton; and that he had received $3,197 from Hill for obtaining jobs for him.
Appellees argue that, once liability had been established by a finding that appellant had breached his fiduciary duty, damages, if the amount is undisputed, must be awarded. We agree. See Kinzbach Tool Co., Inc. v. Corbett-Wallace Corp., 138 Tex. 565, 160 S.W.2d 509, 514 (1942). (A person who has violated his fiduciary relationship may not retain any secret gain or benefit he may have thereby acquired.)
Although, because of our disposition remanding appellant’s second point of error, the third point is not a controlling issue, it is, nevertheless, overruled.
Appellant, by his fourth and fifth points of error, complains of the award of $100,-000 in exemplary damages as excessive. In light of our disposition of the other points of error resulting in a remand in this case, we will not address these points.
Appellant, by his sixth, seventh, eighth, ninth and tenth points of error, complains, by no evidence and insufficient evidence points, that various answers to special issues were not supported by the evidence. In considering a “no evidence” or “insufficient evidence” point of error, we will follow the well-established test set forth in Glover v. Texas General Indemnity Company, 619 S.W.2d 400 (Tex.1981); Garza v. Alviar, 395 S.W.2d 821 (Tex.1965); Allied Finance Company v. Garza, 626 S.W.2d 120 (Tex.App.—Corpus Christi 1981, writ ref’d n.r.e.); CALVERT, No Evidence and Insufficient Evidence Points of Error, 38 Tex.L.Rev. 361 (1960). Under this standard, the evidence as noted in the facts set out above is sufficient to support the jury verdict. Points of error six through ten are overruled.
Appellant, by his eleventh point of error, complains that the trial court abused its discretion in overruling appellant’s fourth motion for continuance because it deprived appellant of the opportunity to offer evidence of satisfaction as a defense to appellee’s cause of action relating to the Durham Interest.
Motions for continuance are governed by Tex.R.Civ.P. 251 et seq. Rule 251 provides that “[n]o application for a continuance ... shall ... be granted except for sufficient cause supported by affidavit_” Nevertheless, the record does not reflect any affidavit filed with appellant’s fourth motion for continuance. Denial of this motion was within the discretion of the trial court. Gordy v. Morton, 624 S.W.2d 705 (Tex.App.—Houston [14th Dist.] 1981, no writ). See also W.R. Grimshaw Co. v. Zoller, 396 S.W.2d 477 (Tex.Civ.App.—San Antonio 1965, writ ref’d n.r.e.). Appellant's eleventh point of error is overruled.
Appellant, by his thirteenth point of error, complains that the jury’s answers to Special Issues Nos. 9 and 17 should be disregarded because the evidence conclusively shows that appellees ratified the actions of appellant regarding the Al’s Formal Wear transaction.
Ratification occurs when a principal, though he originally had no knowledge of the agent’s unauthorized act, retains the benefits of the transaction after acquiring full knowledge of said transaction. Land Title Co. of Dallas v. F.M. Stigler, Inc., 609 S.W.2d 754 (Tex.1980). When the benefits received are the direct, certain, and proximate result of an agent’s unauthorized act, retention of those benefits after the principal acquires knowledge of the transaction constitutes affirmance of the act and ratification of the transaction. F.M. Stigler, 609 S.W.2d at 757.
In the case before us today, we cannot hold that ratification was established as a matter of law. The appellees, upon acquiring full knowledge of the Al’s *350 Formal Wear transaction, repudiated said transaction, requiring Al’s Formal Wear to file suit to enforce the agreement entered into between appellant, as appellees’ agent, and Al’s Formal Wear. Under these circumstances, we cannot agree with appellant’s assertion that “[ajppellees’ payment of $4,750 to Al’s Formal Wear of Fort Worth, Inc. in connection with the resolution of another separate lawsuit, their retention of the kiosk in question and their continued collection of rentals on said kiosk amounts to ratification of Appellant’s acts on their behalf as a matter of law.” Appellant’s thirteenth point of error is overruled.
In three cross-points, appellees complain of the jury instruction and request that, in the event of a reversal, this Court direct that certain instructions not be given in a subsequent trial.
It has been held that it is the duty of an appellate court to pass on appel-lees’ cross-points. Payne v. Lucas, 517 S.W.2d 602 (Tex.Civ.App.—Houston [1st Dist.] 1974, writ ref’d n.r.e.). The trial court is required to “submit such explanatory instructions and definitions as shall be proper to enable the jury to render a verdict_” Tex.R.Civ.P. 277. Under this Rule, an instruction is improper only if it is a misstatement of the law as applicable to the facts. Forney v. Memorial Hospital, 543 S.W.2d 705 (Tex.Civ.App.—Beaumont 1976, no writ); Herrera v. Balmorhea Feeders Inc., 539 S.W.2d 84 (Tex.Civ.App.—El Paso 1976, writ ref’d n.r.e.); Tex.R. Civ.P. 277. The trial court has considerable discretion in the submission of explanatory instructions. First State Bank & Trust Co. v. George, 519 S.W.2d 198 (Tex.Civ.App.—Corpus Christi 1974, writ ref’d n.r.e.). It is the duty of the trial court to submit such explanatory instructions as are proper so as to enable the jury to render a verdict and to issue such instructions that apply the law to the factsj as shown by the evidence in that trial. We are unable to advise the trial court in advance of the trial of the proper instructions. We do not believe that it would be proper to do so in this case. See Payne v. Lucas, 517 S.W.2d 602 (Tex.Civ.App.—Houston [1st Dist.] 1974, writ ref’d n.r.e.). Appellees’ cross-points are overruled.
The judgment of the trial court is REVERSED and RENDERED regarding the Durham and Tiara subleases and otherwise REVERSED and REMANDED for a new trial.

*351

*352

. This statute was subsequently amended. See TEX.REV.CIV.STAT.ANN. art. 5526 (Vernon Supp.1985).

. Although not raised by appellant’s brief, we note that Special Issue 15 inquires whether sixteen enumerated transactions were outside the scope of the agency relationship between appellant and appellees. We consider this to be the same factual inquiry and note the answers to Special Issue No. 15 are not consistent with Special Issues 1, 3, 5, 6 and 7. These inconsistencies are illustrated by a chart included in this opinion as Appendix A.