**Hubert LAIRD, Appellant,**

v.

**TEXACO, INC. and the Texas Pipeline Company, Appellees.**

**No. 09 86 009 CV.**

Court of Appeals of Texas, Beaumont.

Dec. 18, 1986.

David Bonham, Nederland, for appellant.

James M. Harris, Jr., Orgain, Bell & Tucker, Beaumont, for appellee.

## OPINION

BROOKSHIRE, Justice.

Appeal from the granting of a summary judgment. Appellant filed his original petition on July 9, 1982 alleging, inter alia, that Texaco, Inc., and Texas Pipeline Company committed various acts amounting to libel, slander, and defamation, by printing, publishing and speaking libelous and slanderous statements. He alleged also these statements were intended to impeach his reputation as a businessman and that his business dealings deteriorated to the extent he was required to close one or more of his businesses. Inter alia, his oil wells were closed down. On August 30, 1982, Appellant filed his first amended pleading setting forth in greater detail virtually the same acts and statements allegedly amounting to defamation, slander, libel, and that same "caused his business to deteriorate." Hence, his oil wells were closed by the Railroad Commission of Texas, no oil being

produced for 4 months, losing the market for the oil.

On November 1, 1984, the Appellees filed a motion for summary judgment contending that the Appellant's causes of actions were barred by the one year statute of limitations. TEX.REV.CIV.STAT.ANN. art. 5524 (Vernon 1958).

Appellees pleaded that, as a matter of law, Laird was fully aware of the representations and other matters which he claimed constituted defamation of character, libel, slander, and that the original petition was brought much more than one year after the date of the publication of the defamatory libel or slander.

Laird pleaded that on or about June 19, 1980, the Appellees did publish reports and letters to various persons and entities, namely the Railroad Commission of Texas and United States Postal Service. The reports were alleged to have stated, in substance, that Appellant was dishonest and had committed one or more acts of fraud and theft. Appellant said these statements and reports were false and were uttered and published with the intent to injure and harm him and to hold him up to public ridicule and to damage his reputation as a businessman as well as his integrity. Appellant claimed these statements and reports violated TEX.REV.CIV.STAT.ANN. art. 5430 (Vernon 1958).

Appellant's damages were set out at $3,000,000.00, with a count for exemplary damages of an additional $3,000,000.00. Appellant made answers to certain interrogatories. He stated that sometime prior to July, 1980, the agents of the defendants (Appellees) had stated to the Railroad Commission that the Appellant had been stealing oil and on June 19, 1980, L.R. Brandon and G.B. Autry requested the Railroad Commission to test Appellant's wells. Brandon and Autry were employees and agents of Appellees. These individuals had indicated to the Railroad Commission that Laird had been stealing oil from Texaco. By deposition, Appellant swore he attended a mandatory meeting of the Railroad Commission in June, 1980. All producers in the area were required to attend this meeting to discuss a problem. Immediately after this meeting was closed, Paul Staggs of the Texas Railroad Commission told Appellant that his wells must be tested and Staggs further stated:

"Texaco is accusing you of stealing oil." Stagg's statement was witnessed and heard by David Lyons, J.R. Childress, C.K. Warden, David Tortoris [also Tortorice and Titorice] and Wayne Freeman. Appellant, nevertheless, refused to let the Railroad Commission test his wells at that time. Later, the wells were sealed and the electricity to the wells, to operate the same and his adjoining business property, was disconnected. Appellant swore that the date of June 19, 1980 came to his mind but that the representatives of Texaco were coming out to his wells at the late hours of night or the wee hours of the morning prior to that date. Mr. Brandon and Mr. Autry came out to Appellant's lease before June 19 and they were gauging Appellant's tanks and taking pictures. At that same time, Appellant had a warehouse and a garage with equipment that supported his trucking business and his sandblasting business. The reason the Appellant knew it was Brandon and Autry was because one was on top of Appellant's tanks gauging and hollering down to the other. Appellant was looking at Brandon or Autry (while they were gauging his wells) through the scope of his rifle. Appellant said:

"If he would have walked off with anything more than what he come on with, I would have laid him down."

Appellant further testified that the first meeting, which was a mandatory meeting called by the Railroad Commission, was held on July 10, 1980. He attended the same. Appellant swore that, immediately after the meeting, they met at a cafe to have a cup of coffee and he overheard a person connected with the Railroad Commission, a Mr. Scoffield, trying to describe or draw a map for another person showing how to get out to Appellant's lease. Mr. Scoffield, with others, went to the lease; Appellant followed behind them. Paul

Staggs was the Assistant District Director, at the time, of Railroad Commission District 3. Staggs told Appellant that his wells had to be tested, saying:

"Well, to tell you the truth, Laird, they say you was stealing oil."

These statements were made in front of several witnesses. During the next month, being August of 1980, the Railroad Commission actually shut down his wells for a period of 4 months. On the 10th or 11th of July, 1980, Appellant wrote a letter to the Railroad Commission asking, generally, that the Railroad Commission test Texaco's wells. And Texaco people had been coming out to Laird's lease for about 2 months or longer before July 10, 1980. Laird remembers definitely plugging a sink hole on March 4, 1981. Laird said he got indicted in less than two weeks after he plugged the sink hole. Laird swore his wells were tested a second time in September of 1980. We decide that the record clearly demonstrates that Appellant's cause of action for libel, slander and defamation arose in the spring or early summer of 1980, or certainly by July, August or September of 1980, and Laird knew it. He filed his original petition on July 9, 1982. We determine that the one year statute applies.

Appellant admits in his brief that shortly before the district court entered its order granting the Appellees' first motion for summary judgment, Appellant filed his second amended original petition alleging a cause of action, based on alleged malicious and tortious interference with business relations. The record fails to show that the Appellant had leave to file this second amended original petition which was apparently an effort to stay in court on a cause of action described in his brief as "alleged malicious and torturous [tortious] interference with business relations." Although this latest pleading could not be considered as an affidavit in an effort to defeat Appellees' first motion for summary judgment; nevertheless, it is referred to impliedly in Appellant's response to the motion for summary judgment.

In his response, Appellant said that the actions pleaded and alleged, from all appearances, constituted both libel, slander and tortious interference with a business of Appellant and that a ruling by the court that the plaintiff's (Appellant's) only cause of action was for libel and slander would have been premature. It is clear, however, from Appellant's response that the tortious interference with his businesses was the testing of plaintiff's (Appellant's) oil wells and the shutting down of same for a period of 4 months in the summer of 1980. Appellant, of course, knew of the complete shutting down of his own oil wells. This action was followed by continued criminal investigations and indictment and administrative actions. These resulted in the shutting down of Appellant's other business activities. We, therefore, conclude that whether the one or two year statute of limitation applies, Appellant's suit was barred. Further, the docket sheet shows:

■ "Parties agreed to Partial Summary Judgment...." We conclude that the cause of action accrued when the injury occurred (Laird knew of the injury) and the statute of limitations runs against the action to recover damages from the date of the communications and not from the date of the consequences or sequelae. *Kelley v. Rinkle*, 532 S.W.2d 947 (Tex.1976); *Stillwell v. City of Fort Worth*, 162 S.W.2d 1046 (Tex.Civ.App.—Forth Worth 1942), aff'd, 140 Tex. 560, 169 S.W.2d 486 (1943).

■ We determine finally, as a separate and independent ground for our affirmance, that the Appellant's claim for tortious interference with his business is, under this record, indistinguishable from his claim for libel and slander. Therefore, the same limitation period applies which is the one year statute. *Moore and Associates v. Metropolitan Life Insurance Co.*, 604 S.W.2d 487 (Tex.Civ.App.—Dallas 1980, no writ).

Of course, some of the consequences and the sequelae of the alleged libel and slander took place after the alleged utterances and publications. In fact, some of the consequences may have transpired a year or

more later. If we start the running of the one year statute as of the happening of all the consequences, it would simply defeat the legislative intent of placing a one year statute of limitation on libel and slander. This, we are unwilling to do.

The cause of action accrues when the injury occurs and the words are spoken and the letters published which the Appellant knew of virtually simultaneously and limitation runs from those events and from the date of the communications rather than from the date of the later consequences and the sequelae. *Moore and Associates v. Metropolitan Life Insurance Co.*, 604 S.W.2d 487 (Tex.Civ.App.—Dallas 1980, no writ).

We affirm the action of the trial judge below and order that Laird take nothing from the Appellees.

AFFIRMED.

BURGESS, Justice, concurring.

I concur in the result, but do not agree with the rationale of the majority. As noted in the majority's opinion, the trial court granted an initial partial summary judgment on the basis that the defamation causes of action were barred by the one-year statute of limitation. Appellees' second motion for summary judgment was based on the premise that the second amended petition was barred because the filing of the original petition did not toll the statute of limitations. This is the correct basis, in my opinion, for the summary judgment and the affirmance.

TEX.REV.CIV.STAT.ANN. art. 5539(b), now TEX.CIV.PRAC. & REM.CODE ANN. sec. 16.068 (Vernon 1986), allows an amended petition, asserting a cause of action barred by limitations, to avoid the plea when the original cause of action was not subject to any limitations bar. Since the original cause of action was barred, the statute was not tolled by the filing of the suit. As a result, the tortious interference claim must have been timely filed independent of the original petition. In this case, the amended petition which alleged the tortious interference with business relation

was filed on November 18, 1984. The alleged acts would have to have occurred after November 18, 1982, to be within the two-year limitations period. TEX.CIV. PRAC. & REM.CODE ANN. sec. 16.003 (Vernon 1986). There were no allegations of any tortious acts within the two-year period. The trial court was correct in granting the summary judgments in both instances.