Gloria **MARTINEZ**, Appellant,

v.

Ray **HARDY**, individually and d/b/a Ray Hardy District Clerk's Office; Harris County; and Sharon Trigg, Appellees.

No. C14–93–00072–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Oct. 28, 1993.

W. Troy McKinney, Houston, for appellant.

Mike Driscoll, Eleanor Robinson, Barbara L. Burnett, Houston, for appellees.

Before ROBERTSON and CANNON, JJ., and MORSE, J., Sitting by Designation.

## OPINION

ROBERT E. MORSE, Jr., Justice, Sitting by Designation.

This is an appeal of a summary judgment. Appellant Martinez sued Harris County; Ray Hardy, individually and in his official capacity as Harris County District Clerk; and Sharon Trigg, Hardy's Assistant Chief Deputy Clerk. Martinez claimed defamation, breach of contract/wrongful termination, and tortious interference with contract. The trial court granted defendants' joint motion for summary judgment. Martinez appeals. We affirm.

Harris County, Hardy, and Trigg concede Martinez' version of the facts for purposes of their motion for summary judgment. On May 1, 1985, Martinez began her employment in the Harris County District Clerk's Office as a file maintenance clerk. Martinez signed the employee's agreement section of her employment contract that stated in pertinent part, "I understand that my employment may be terminated *at will* by me or my employer without notice and that there is *no tenure* in County government." (Emphasis added.) Hardy renewed Martinez' contract annually. Trigg was Hardy's Assistant Chief Deputy Clerk and Martinez' supervisor. Trigg reported to Hardy that Martinez had willfully falsified a juror excuse form. Trigg knew of the employment contract between Martinez and Hardy and intentionally induced Hardy to terminate Martinez. Hardy accepted Trigg's report as true and terminated Martinez on April 25, 1988. Martinez complained to the Harris County Grievance Resolution Committee (the "Grievance Committee"). The Grievance Committee held a hearing, found that Martinez had been wrongfully terminated, and recommended that she be reinstated. Hardy refused to reinstate Martinez.

██ We note that, in accepting Martinez' version of the facts, Harris County, Hardy, and Trigg also stipulated to certain conclusory statements of law intermixed with the facts, i.e., that Martinez was wrongfully terminated, that Trigg acted in bad faith and with malice, and that Hardy breached Martinez' employment contract. However, parties cannot validly stipulate to legal conclusions to be drawn from the facts of the case. *Smith v. Morris and Company,* 694 S.W.2d 37, 39 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.). Such stipulations are without effect and bind neither the parties nor the court. *Id.*

In points of error one through three, Martinez complains that the trial court erred in granting summary judgment on her claims of defamation, breach of contract/wrongful ter-

mination, and tortious interference with contract. In points four through six, she argues that the trial court erred in granting summary judgment on Harris County's affirmative defense of governmental immunity, on Hardy's and Trigg's affirmative defense of qualified immunity, and/or on all appellees' affirmative defense of limitations.

We will address Martinez' last three points of error as required under our discussion of her first three points. But first, some preliminary matters.

. Martinez asserts that she did not receive the 21–day hearing notice required by Tex. R.Civ.P. 166a(c). She argues that only 20 days elapsed from the time appellees amended their answer to add a statute of limitations defense against her defamation claim.

■ First, Martinez did not present this complaint to the trial court. "Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal." *Id.* Second, the limitations defense was included in appellees' motion for summary judgment filed almost three months before the hearing. It is true that Martinez might have defeated the limitations ground for summary judgment for lack of pleadings had appellees not amended their answer before the summary judgment hearing. *See Roark v. Stallworth Oil & Gas, Inc.,* 813 S.W.2d 492, 494 (Tex.1991). However, absent a showing of surprise by the opponent, pleadings may be amended up to seven days before trial or summary judgment submission without leave of court. Rule 63. Here, appellees amended their answer a full 20 days before the hearing, and Martinez did not make a showing of surprise.

We find that Martinez received the required notice of the summary judgment hearing and the appellees' limitations defense.

■ Martinez next contends that appellees' affidavit authenticating their summary judgment attachments was not filed within 21 days of the summary judgment hearing. Therefore, she argues, the affidavit is not part of the summary judgment proof, and the attachments remain unauthenticated.

However, in her supplemental response to appellees' motion for summary judgment, Martinez stated that she "relies upon the exhibits attached to Defendants' Motion for Summary Judgment in support of the response made herein and incorporates same by reference as if fully set forth verbatim." Also, Martinez never objected to the late filing of appellees' authenticating affidavit.

Martinez affirmatively relied on the objected-to summary judgment proof. Having done so, she waived error regarding its authentication.

## STANDARD OF REVIEW

■ The movant for summary judgment has the burden to show that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). In deciding whether there is a disputed material fact issue precluding summary judgment, we take evidence favorable to the non-movant as true. *Id.* We indulge every reasonable inference in favor of the non-movant and resolve any doubts in his favor. *Id.* If the movant's motion and summary judgment proof facially establishes his right to judgment as a matter of law, then the burden shifts to the non-movant to raise fact issues precluding summary judgment. *See City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979). A defendant, to be entitled to summary judgment, is required to disprove at least one essential element of each pleaded cause of action or otherwise show that plaintiffs could not succeed on any theory pleaded. *Rosas v. Buddie's Food Store,* 518 S.W.2d 534, 537 (Tex.1975). A defendant is entitled to summary judgment on the basis of an affirmative defense if he expressly presents and conclusively proves each essential element of the affirmative defense. *Swilley v. Hughes,* 488 S.W.2d 64, 67 (Tex. 1972). In the present case, the order granting the summary judgment did not specify the grounds on which the judgment was based. In this circumstance, we affirm the summary judgment on any ground raised by the motion for summary judgment that is supported by the summary judgment proof

and the applicable law. *Wavell v. Roberts,* 818 S.W.2d 462, 464 (Tex.App.—Corpus Christi 1991, writ denied).

## A. DEFAMATION

In point of error one, Martinez complains that the trial court erred in granting summary judgment on her defamation claim.

### 1. *Harris County & Hardy (official capacity)*

In their motion for summary judgment, Harris County and Hardy (in his official capacity) claimed governmental immunity. Except as waived by the Texas Tort Claims Act, Harris County, when performing a governmental function, is immune from suit on the torts of its officers, agents, and employees. *See City of Dallas v. Moreau,* 718 S.W.2d 776, 779 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.); TEX.CIV.PRAC. & REM. CODE ANN. § 101.001 *et seq.* (Vernon 1986 and Supp.1993). The operation of the Harris County District Clerk's Office is unquestionably a governmental function, as is the hiring and firing of County employees. *See Moreau, supra.*

Under the Tort Claims Act, Harris County could be held liable for:

(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

(A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

(B) the employee would be personally liable to the claimant according to Texas law;

and

(2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

Section 101.021.

Martinez argues that her claim arose from the use of the juror excuse form, an item of tangible personal property. The term "caused by … [the] use of tangible personal property" has been held to apply to the improper maintenance and interpretation of medical records by a defendant hospital. *See University of Texas Medical Branch v. York,* 808 S.W.2d 106, 108 (Tex.App.—Houston [1st Dist.] 1991, writ granted) (failure of defendant hospital to record an essential entry onto a plaintiff's medical chart) *and Salcedo v. El Paso Hosp. Dist.,* 659 S.W.2d 30, 33 (Tex.1983) (improper reading and interpretation by defendant hospital of graphs from electrocardiogram tests it made on plaintiff's husband). However, the record at issue here was prepared by Martinez. Her slander claim arose from statements made by Trigg in connection with Martinez' own recordkeeping error, not with regard to a record about her prepared by Harris County.

The summary judgment proof shows, as a matter of law, that Martinez' injury, if any, was not caused by the "operation or use of a motor-driven vehicle … or equipment" or by a "condition or use of tangible personal … property." The very essence of a slander claim is injury caused by an oral statement. An oral statement is neither motor-driven nor tangible personal property.

We find that the summary judgment proof establishes Harris County's governmental immunity to the defamation claim. This absolute immunity extends to Hardy in his official capacity as District Clerk. *See Kelly v. Galveston County,* 520 S.W.2d 507, 512 (Tex.Civ.App.—Houston [14th Dist.] 1975, no writ).

### 2. *Hardy (individual capacity)*

We find that Hardy's communications made in the exercise of his official responsibilities of personnel evaluation and staffing were absolutely privileged.

Absolute privilege, in the law of defamation, "protects the public interest by shielding responsible government officials against harassment and inevitable hazards of vindictive or ill-founded damage suits brought on account of actions taken in the exercise of their official responsibilities." *Town of South Padre Island v. Jacobs,* 736 S.W.2d 134, 143 (Tex.App.—Corpus Christi

1986, writ denied). Absolute privilege may apply "even though, at times, it may result in individual citizens suffering pecuniary loss as a result of oppressive or malicious actions by government officials." *Id.* A civil action for libel or slander will not lie against an absolutely privileged communication even though the language is false and uttered or published with express malice. *Id.* at 143.

■■■■ Any communication in the due course of a judicial proceeding is absolutely privileged. *Id.* This rule applies to proceedings before executive officers who exercise quasi-judicial power. *Id.* An executive officer is acting in a quasi-judicial rather than an administrative capacity when he exercises some or all of the following judicial powers: (1) to exercise judgment and discretion, (2) to hear and determine or to ascertain facts and decide, (3) to make binding orders and judgments, (4) to affect personal or property rights of private persons, (5) to examine witnesses, compel attendance of witnesses, and hear the litigation of issues on a hearing, and (6) to enforce decisions or impose penalties. *Id.* at 144. The more of these powers he has, the more clearly the executive officer's acts are deemed quasi-judicial. *Id.*

In this area of personnel evaluation and the determination of whether to discharge an employee, Hardy is required to exercise all the powers listed above with the exception of the power to compel the attendance of witnesses. We find that the deliberative process concerning the discharge of a deputy district clerk is quasi-judicial. Communications made in the furtherance of that process are absolutely privileged. "The extension of absolute privilege to utterances during judicial or quasi-judicial proceedings gives to individuals the same latitude and freedom of expression during such proceedings as the doctrine of governmental immunity gives to the governmental body itself." *Id.*

Citing *Kelly, supra,* Martinez complains that the statements in the affidavits of Hardy and Trigg were mere opinions and conclusions and could not establish the existence of facts in support of appellees' motion for summary judgment.

■■■ However, the averments in Hardy's affidavit were more than the "*bare assertion* ... that [he was] acting within [his] legal capacit[y]" that was found wanting in *Kelly. Kelly,* 520 S.W.2d at 513 (emphasis added). Hardy's affidavit established that (1) he held the position of District Clerk, (2) Martinez' appointment was within his exclusive control under an at-will contract, (3) in order to run his office in an efficient and orderly manner, he had to rely on Trigg to relate to him specifics on the performance of deputy clerks, (4) such reports were made in the regular course of business of the District Clerk's office, (5) Trigg's report on Martinez concerned a normal disciplinary function within his office, (6) Trigg acted in conformity with the rules, regulations, and policies promulgated by the District Clerk's office and in accordance with all governing laws and rules, and (7) Hardy never discussed or divulged any information regarding Martinez' dismissal to anyone other than the appropriate personnel within the District Clerk's office. Trigg's affidavit substantiates Hardy's averments.

We find that this summary judgment proof is sufficient to establish as a matter of law that Hardy's statements regarding Martinez' termination were made in the course of his official responsibilities and were absolutely privileged.

Martinez further complains that, in support of a defense of qualified privilege, the burden was on Hardy and Trigg to establish the absence of malice in their motion for summary judgment. *Jackson v. Cheatwood,* 445 S.W.2d 513, 514 (Tex.1969). She contends that lack of malice may not be proved by a party's own conclusary affidavit that he had no malice. *See Casso v. Brand,* 776 S.W.2d 551, 559 (Tex.1989).

We have found that Hardy's communications concerning Martinez' performance evaluation and her discharge were absolutely privileged. As such, the issue of malice, or lack thereof, is moot. We need not address the sufficiency of Hardy's and Trigg's affidavits in that regard.

■■■ We note that, in their motion for summary judgment, Hardy and Trigg claimed "qualified immunity," but couched

their argument in terms of absolute and qualified privilege. Indeed, our finding of absolute privilege could be expressed in terms of qualified immunity. A government official or employee, who is sued in his individual capacity, is immune from suit and liability if (1) his status or action can be classified as quasi-judicial, (2) his actions were within the scope of his authority, and (3) he acted in good faith. *Chapman v. Gonzales,* 824 S.W.2d 685, 687 (Tex.App.—Houston [14th Dist.] 1992, writ denied). Our absolute privilege analysis clearly shows that the first two elements of qualified immunity are met. And the exercise of an absolute privilege, being totally independent of the state of mind of the communicator, renders consideration of the good faith element of qualified immunity moot.

Therefore, whether expressed in terms of absolute privilege or qualified immunity, we find that the trial court properly granted summary judgment in favor of Hardy as to Martinez' defamation claim.

### 3. Trigg

The summary judgment proof shows that Trigg, as Assistant Chief Deputy Clerk, had among her duties the supervision of Martinez and other deputy clerks as well as the maintenance of an orderly and efficient clerk's office. Her responsibilities included reporting to Hardy on the performance of deputy district clerks. For the reasons discussed above, we find that Trigg's communications to Hardy were also absolutely privileged.

We find that summary judgment was proper in favor of Trigg on Martinez' defamation claim.

### 4. All Appellees

■ All appellees claimed a statute of limitations defense against Martinez' defamation claim. A suit for libel or slander must be brought no later than one year after the day the cause of action accrued. TEX.CIV. PRAC. & REM.CODE ANN. § 16.002 (Vernon 1986). A cause of action for slander accrues when the words are spoken and the injury occurs. *Salazar v. Amigos Del Valle, Inc.,* 754 S.W.2d 410, 412 (Tex.App.—Corpus Christi 1988, no writ).

■ The summary judgment proof shows that the latest date that Martinez' cause of action arose was April 25, 1988, the date of her termination. Martinez did not file suit until December 21, 1989, eight months after the limitations period had expired.

■ Martinez points to the August 1989 finding of the Harris County Grievance Committee as evidence of republication of the statement that she willfully falsified public records. But Martinez' relating to the Committee the reason for her termination was clearly not understood by the Committee to be defamatory. That is, the Committee found that the statement was untrue and therefore would not have understood the statement to disparage her reputation. *See Diesel Injection Sales & Servs. v. Renfro,* 656 S.W.2d 568, 573 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.). Therefore, the summary judgment proof does not raise a fact issue regarding a republication of the type necessary to restart the limitations period. Moreover, we note that Martinez requested the grievance procedure and can be found to have consented to any republication necessary for the grievance process. *See Lyle v. Waddle,* 144 Tex. 90, 188 S.W.2d 770, 772 (1945).

■ Martinez also argues that she was required to exhaust her administrative remedies before bringing suit. The grievance process was not complete until August 3, 1989. Therefore, she argues, the limitations period did not begin to run until that date. However, Martinez directs us to no statute or caselaw establishing that completing the Harris County grievance process is a prerequisite to her bringing suit. The Harris County grievance process is only available to *current* employees. "[O]nce terminated, appellant was no longer an employee entitled to present his grievance to the grievance committee." *Renken v. Harris County,* 808 S.W.2d 222, 224 (Tex.App.—Houston [14th Dist.] 1991, no writ). The grievance procedure is not a forum for reconsideration of a discharge and reinstatement. *See id.* at 225–26. Where the legislature has elected not to require resort to an administrative agency, the doctrine of exhaustion of remedies does

not preclude initiating proceedings in the State courts. *Singer v. Clayton Brokerage Co. of St. Louis*, 620 S.W.2d 720, 725 (Tex. Civ.App.—Dallas 1981, writ ref'd n.r.e.). Martinez is not entitled to a tolling of her limitations period pending completion of the grievance process.

We find that Martinez' defamation claim is barred by limitations. Summary judgment was proper for all appellees.

### 5. Summary

Summary judgment was proper as to all appellees on Martinez' defamation claim. The trial court could have found that (1) Harris County and Hardy (in his official capacity) were protected by governmental immunity and (2) Hardy and Trigg were protected by absolute privilege. Alternatively, the trial court could have found that claims against all appellees were barred by the statute of limitations. We overrule point one.

## B. BREACH OF CONTRACT

In point three, Martinez argues that the trial court erred in granting summary judgment on her breach of contract claim.

■ On appeal, Martinez abandons her tort claim of wrongful termination. In any event, we note that wrongful termination is not a tort for which the Tort Claims Act waives governmental immunity. *Moreau*, 718 S.W.2d at 779. Martinez now characterizes her termination by Hardy as a breach of her employment contract.

The employer's agreement section of Martinez' employment contract was signed by Ray Hardy over the signature block, "RAY HARDY, DISTRICT CLERK." Martinez contract was between her and Harris County. Hardy was not a party to the contract in his individual capacity.

Martinez contends that the passage of legislation establishing the Harris County grievance procedure modified her "at will" contract, making it subject to the grievance process. *See* Tex.Rev.Civ.Stat.Ann. art. 2372h–12 [repealed by Acts 1989, 71st Leg., ch. 1, § 39(b), eff. Aug. 28, 1989]; *see, now,* Local Gov't Code Ann. § 160.001 *et seq.* (Vernon Supp.1993). She insists that Hardy was not

free to disregard the recommendation of the Grievance Committee that Martinez be reinstated.

■ However, the grievance procedure legislation merely provides for standardized procedures for handling the grievances of *current* employees concerning wages, hours of work, or conditions of work. *State v. Hardy*, 769 S.W.2d 353, 355 (Tex.App.—Houston [1st Dist.] 1989, no writ). The legislation does not set up a discharge process. *Renken*, 808 S.W.2d at 225. It does not endow Martinez with a property interest. *See id.* Any modification of the general "at will" rule must be clear and explicit. *Id.* Here, the summary judgment proof establishes an "at will" employment contract, nothing more. Therefore, Martinez or Hardy could terminate her employment with or without cause. *See Jacobs*, 736 S.W.2d at 137–38. Hardy was not bound by the Grievance Committee's findings or recommendations.

Martinez also alludes to the existence of an additional oral contract promising her employment "for so long as an employee does faithful, honest, and satisfactory work." However, she did not plead such an oral contract or offer any summary judgment proof of its existence.

We find that the summary judgment proof established that Martinez was an "at will" employee subject to termination at any time for any reason or no reason. As a matter of law, neither Harris County nor Hardy (in his official capacity) breached Martinez' employment contract by terminating her. We overrule point three.

## C. TORTIOUS INTERFERENCE WITH CONTRACT

In point two, Martinez contends that the trial court erred in granting summary judgment on her tortious interference with contract claim.

Martinez pled that Trigg improperly reported to Hardy that Martinez willfully falsified public records, thereby inducing Hardy to terminate her and breach her employment contract.

The gravamen of Martinez' tortious interference claim is the allegedly defamatory statements Trigg made to Hardy. We have found that those statements were absolutely privileged. Therefore, Trigg had a bona fide right to make the statements, and any resulting interference with Martinez' employment contract was not actionable. *See Black Lake Pipe Line Co. v. Union Construction Co.,* 538 S.W.2d 80, 91 (Tex.1976), *overruled on other grounds,* 767 S.W.2d 686 (1989). Alternatively, Trigg, as Martinez' supervisor, had a superior interest to Martinez in the efficient operation of the clerk's office. *See id.* The summary judgment proof showed that Trigg's reporting to Hardy on Martinez' performance was done in the context of personnel evaluation and staffing functions essential to the running of the clerk's office. As such, Trigg's report was in legitimate pursuit of a superior interest, and the interference with Martinez' contract was justified.

We also note that Trigg was an employee or agent of Harris County, the party to the employment contract with Martinez. Neither Harris County, Hardy, nor Trigg was an "intervening third party" required for a claim of tortious interference. *See Schoellkopf v. Pledger,* 778 S.W.2d 897, 902 (Tex.App.— Dallas 1989, writ denied).

Finally, since Martinez' claim for tortious interference with contract is inextricably intertwined with and dependent upon her claim for slander, the one-year limitation period for slander applies. *See Laird v. Texaco, Inc.,* 722 S.W.2d 519, 521 (Tex. App.—Beaumont 1986, no writ). Therefore, her claim for tortious interference is barred by the statute of limitations for slander as previously discussed.

We overrule point two.

### D. CONCLUSION

We have overruled Martinez' points of error one through three. In so doing, we considered Martinez' objections to appellees' defenses, and we now overrule her points of error four through six. We find that the trial court did not err in granting summary judgment in favor of Harris County, Hardy, in his official capacity, and Hardy and Trigg in their individual capacities.

Finding no error, we affirm.