Lorene KETCHAM, Appellant,

v.

FIRST NATIONAL BANK OF NEW BOSTON, TEXAS, Appellee.

No. 06-93-00041-CV.

Court of Appeals of Texas, Texarkana.

Submitted Nov. 2, 1993.

Decided May 2, 1994.

Kirk Johnson, Wyrick, Gooding & Johnson, Texarkana, for appellant.

Charles G. Hall, Texarkana, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

GRANT, Justice.

Lorene Ketcham appeals from a take-nothing summary judgment rendered in favor of First National Bank of New Boston.

Ketcham contends that issues of material fact on her allegations of fraud, breach of fiduciary duty, and indebtedness were raised by the summary judgment proof and that this cause should be remanded for trial on the merits.

Ketcham brought suit against the Bank alleging that it had committed fraud by breaching its fiduciary duty to disburse funds of $60,000 that came available upon the sale of her house to her son. The Bank moved for summary judgment based upon its contention that it had received the money, that it neither owed nor had breached any fiduciary

duty to her, and that the action was barred by limitations. The summary judgment does not specify the ground upon which judgment was granted.

Because the movant bears the burden of proof, in our analysis of a summary judgment, all conflicts in the evidence are disregarded, evidence favorable to the nonmovant is taken as true, and all doubts as to the existence of a genuine issue of material fact are resolved in favor of the nonmovant. *Nixon v. Mr. Property Management,* 690 S.W.2d 546 (Tex.1985). A defendant who moves for summary judgment must demonstrate that at least one essential element of the plaintiff's cause of action has been disproved as a matter of law. *Hammonds v. Thomas,* 770 S.W.2d 1 (Tex.App.—Texarkana 1989, no writ). Once the defendant has negated an essential element of the plaintiff's cause of action, the burden then shifts to the plaintiff to produce some evidence of probative force raising an issue of fact as to the element negated. *Goldberg v. U.S. Shoe Corp.,* 775 S.W.2d 751, 752 (Tex.App.—Houston [1st Dist.] 1989, writ denied).

In support of its motion for summary judgment, the Bank submitted an affidavit by its president in which he stated that it had provided the funds for the purchase of Ketcham's home and had deposited the funds in a trust account belonging to the attorneys who were assisting with the sale.

He also testified that the attorney gave a check for the balance to Lorene Ketcham and her husband.[1] He further testified that this check was endorsed back to the attorney and that the various expenditures involved in the sale of property were then disbursed by the attorney. Thereafter, at Ketcham's direction, the attorney wrote a check making the balance of the proceeds payable to the purchasers, Marvin and Mattie Ketcham, the plaintiff's son and daughter-in-law. The president further testified that the Bank had no relationship, conversations with, or contacts with either Lorene or her husband. Each statement concerning a monetary transaction is further supported by exhibits

---

1. The house was the homestead of Lorene Ketcham and her now-deceased husband.

consisting of copies of the Bank records and checks involved.

The Bank's motion is also supported by the affidavit of the attorney who was handling the transaction, Jerry Davis. He swore in his affidavit that the transaction took place in the following manner: Lorene and her husband decided to convey their home to their son, Marvin. The Bank lent money to the son so that he could purchase his parents' house. After deductions involved with the transfer, the balance of $60,000 was tendered by check to the parents, who then endorsed it back to the attorney and directed him to use the funds for whatever purpose their son desired. The attached documentation indicates that the loan was secured with a real estate lien note, payable by Marvin and Mattie Ketcham, that used the house as collateral. The note states that it is commercial in nature.

Ketcham's controverting evidence consists of Marvin's affidavit stating that he had requested a loan of $60,000 from the Bank and that the Bank had told him that more collateral was required. He swore that:

> ·I requested a loan in the amount of $60,000.00 from First National Bank of New Boston, the bank office told me they needed more collateral and ask (sic) if my parents would "sell" me their homestead which I could use as collateral. The bank said they would not really sell me the home, it was necessary to have the "sale" so they could make a loan.

These factual statements are made in support of the allegation that the transaction was merely a sham which was designed to assist the son in obtaining money through a loan from the Bank despite the language of the deed of trust which states that money was borrowed by the son from the Bank to pay Lorene and her husband for the property.

■ The Bank first contends that summary judgment was properly taken because, under the plaintiff's allegations, the statute of limitations had run before suit was filed. There is no disagreement between the plaintiff and defendant as to the operative date of the act upon which suit had been brought.

The activities involved took place on or about December 16, 1986. Suit was brought on May 8, 1990. Accordingly, if the two-year statute of limitations applies as alleged by the Bank rather than the four-year statute for which Ketcham argues, summary judgment would be properly rendered because limitations had run.

Accordingly, we must examine the allegations raised by Ketcham and determine which statute would apply. Ketcham's allegations are set out as a breach of fiduciary duty through the implementation of a "sham" transaction. She argues that she was defrauded by the Bank because of its unlawful manner of doing business. The limitations period for actions in fraud are set out by TEX.CIV.PRAC. & REM.CODE ANN. § 16.051 (Vernon 1986). Thus, in an action based upon allegations of fraud, the four-year limitation period would apply. *Williams v. Khalaf*, 802 S.W.2d 651, 657–58 (Tex.1990). Therefore, under the undisputed evidence, limitations have not run.

■ Ketcham next argues that the transaction was a sham and designed solely to circumvent Texas homestead laws. Her arguments in connection with her allegations of fraud are based in part upon her contention that the Bank never tendered funds as it had agreed to do. The Bank has provided summary judgment evidence that it tendered the full amount to the attorneys who then, after paying various expenses, transferred the remaining $60,000 to Ketcham and her husband by check. The check was endorsed by the Ketchams and redeposited in the attorneys' trust account. There is no summary judgment evidence to the contrary.

■ However, the question remains of whether there is summary judgment proof raising the factual question of whether the transaction was in fact a sham and thus void under the Texas Constitution. An instrument creating a lien on a homestead, which is of the character denounced by the constitutional provision relating to homesteads, is void regardless of its form. TEX. CONST. art. XVI, § 50; *Anglin v. Cisco Mortgage Loan Co.*, 135 Tex. 188, 141 S.W.2d 935 (1940).

**756**

■ The key issue to be resolved in determining whether a sale is real or pretended is the factual question of whether the parties intended title to vest in the purchaser. *Hardie & Co. v. Campbell*, 63 Tex. 292 (1885); *McGahey v. Ford*, 563 S.W.2d 857, 862 (Tex.Civ.App.—Fort Worth 1978, writ ref'd n.r.e). If the transfer is intended to be bona fide, a sale is not pretended. *Nowlin v. Wm. Cameron & Co.*, 54 S.W.2d 1035 (Tex.Civ.App.—Fort Worth 1932, writ ref'd); *see Eckard v. Citizens National Bank in Abilene*, 588 S.W.2d 861 (Tex.Civ.App.—Eastland 1979, writ ref'd n.r.e).

■ If a bank advances funds secured by a lien on a homestead with knowledge or notice that the sale was a pretense, the lien is void. If, however, the bank advanced the money in reliance on the apparent genuineness of the sale, without knowledge of the subterfuge or of facts that would put a reasonable lender on notice, the lien can be enforced. *Fuller v. Preston State Bank*, 667 S.W.2d 214 (Tex.App.—Dallas 1983, writ ref'd n.r.e).

■ One question is whether the deed is an absolute conveyance. A homestead owner may lawfully sell a homestead for the purpose of paying an indebtedness to the bank. An additional factor is whether the purchase money was actually paid to the seller, or whether it was applied to pre-existing debts. *Anglin*, 141 S.W.2d 935.

The distinction between the above-cited cases and the present case lies in the uncontroverted fact that the original owner of the homestead, plaintiff herein, did not sell the property in order to either obtain a loan or pay on an extant loan. The uncontested summary judgment evidence shows that she sold the property to her son and was paid the amount due. However, there is evidence that the son considered the conveyance to him to be a sham. The son testified by affidavit that he had sought a loan from the Bank, and that a Bank officer "told me they needed more collateral and ask (sic) if my parents would 'sell' me their homestead which I could use as collateral. The bank said they would not really sell me the home, it was necessary to have the 'sale' so they could make a loan."

This evidence, when examined under the stringent standard imposed in a summary judgment review, is sufficient to raise a factual issue as to whether the transfer was part of a "pretended sale" instigated by the Bank for the purpose of circumventing constitutional homestead protections. The fact that the money was not applied to loans of the owner personally is not dispositive. The constitution provides no such restriction, and we will not infer one in the face of the constitution's clear language. TEX. CONST. art. XVI, § 50.

Since a factual issue has been raised on this point, we reverse the judgment of the trial court and remand for a trial on the merits.